No. 16,430.

CROWLEY ET AL. *v.* HARDMAN BROTHERS ET AL.

(223 P. [2d] 1045)

Decided October 30, 1950.

490

Messrs. MOYNIHAN-HUGHES-SHERMAN, for plaintiffs in error.

Messrs. STRANG & LOESCH, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

VELMA CROWLEY and J. B. Crowley, her husband, instituted this action against H. E. Hardman, Kathryn Hardman, Bruce Hardman and Jessie Hardman, copartners doing business as Hardman Brothers, Elmer Archer

and The Western Casualty and Surety Company, seeking judgment for damages to their automobile and for personal injuries resulting from an automobile-truck collision. The Western Casualty and Surety Company, Bruce Hardman, Jessie Hardman and the partnership known as Hardman Brothers, appearing specially for that purpose, moved that they be dismissed as defendants for the reason that they were "neither necessary nor permissible parties defendant in said action." The trial court granted the motion as to The Western Casualty and Surety Company but overruled it as to Bruce Hardman, Jessie Hardman and Hardman Brothers. At the conclusion of all the evidence, Bruce Hardman and Jessie Hardman moved that they be dismissed as defendants in the action, which motion was granted, leaving H. E. and Kathryn Hardman as defendants; the jury returned a verdict in their favor, and appropriate judgment followed, to reverse which plaintiffs bring the cause here for review by writ of error. We will herein refer to the parties as plaintiffs and defendants or by name.

In the complaint it is alleged that the Hardmans entered into a partnership agreement on the 26th day of July, 1948, for the purpose of transporting certain ores within a fifty mile radius of Dove Creek, and on the 31st day of July, 1948, made application to the Public Utilities Commission of the State of Colorado for a certificate to operate such transportation service. It further is alleged that H. E. Hardman and Kathryn Hardman owned the certificate of title to the truck involved in the accident; further, "That on the said 9th day of August, 1948, the Defendant Western Casualty and Security Company, an insurance corporation doing business in this state, had in effect its liability insurance policy in favor of Defendants H. E. Hardman and Kathryn Hardman in the sum of Ten Thousand Dollars ($10,000.00), for injury or death to all persons, arising out of their operations with said 4-ton International

truck Motor Number RED 4502205245, Model KBR 1-L, as provided by law and the regulations of the Public Utilities Commission of this state." It is also alleged that the truck was used by the partners in transporting ores and supplies, and that Elmer Archer, one of the defendants, was employed by Hardman Brothers to operate said truck; that on August 9, 1948, at about 5:30 o'clock P.M., and while Archer was acting in the scope of his employment, he negligently and carelessly operated the truck belonging to H. E. Hardman and Kathryn Hardman so that a collision with plaintiffs' 1942 Buick automobile occurred, resulting in damages for which, as hereinbefore stated, judgment was asked. It also is alleged that Velma Crowley was a housewife and engaged in performing the duties of a wife, and, as a result of the injuries received by her in said accident, she was unable to perform such duties and suffered permanent injuries, for which, together with damages to the Buick automobile, plaintiffs demanded judgment in the sum of $25,000.00.

Thereafter plaintiffs filed their amended complaint, omitting as one of the defendants in the action The Western Casualty and Surety Company, and in the answer and replication thereto the same omission also is made. At the conclusion of all of the evidence, plaintiffs requested, and were granted, permission to further amend their amended complaint, setting forth specifically the damages and injuries which plaintiffs sustained as a result of the accident.

The defendants filed their answer, admitting the partnership, the application for a certificate of public convenience and necessity; the ownership of the truck in defendants H. E. and Kathryn Hardman as alleged by plaintiffs, and its involvement in the collision. By their answer they denied that Archer was an employee of the defendants as partners and affirmatively alleged that he was the employee of the defendants H. E. and Kathryn Hardman only. Archer's negligence was denied, and

the damages and injuries allegedly sustained by plaintiffs were denied because defendants did not have "sufficient information upon which to base a belief as to said allegations and therefore deny the same."

For a second and further defense Bruce and Jessie Hardman alleged that H. E. and Kathryn Hardman were the owners of the truck involved in the accident, were entitled to all the profits from the operation thereof, "and shall be liable for all losses * * * occasioned by the operation thereof"; it was further alleged that this fact was known to the Public Utilities Commission of the State of Colorado, which was fully advised thereof, and consented to and approved such arrangement prior to the issuance of a temporary certificate of public convenience and necessity; also it is alleged that on August 9, 1948, at the time of the accident, the operation of said truck was under the exclusive direction, management and control of H. E. and Kathryn Hardman, and that Archer, the driver thereof, was hired and his salary paid by H. E. and Kathryn Hardman, and that defendants Bruce and Jessie Hardman had no control over the truck or the employee Archer.

For a third and further defense, after incorporating by reference the first and second defenses hereinbefore set forth, the defendants alleged that the accident was the result of the carelessness and negligence of J. B. Crowley in the operation of the automobile in which the plaintiffs were riding at the time of the accident.

At the trial and immediately before plaintiffs rested, defendants moved to amend their answer by adding a fourth and further defense alleging contributory negligence on the part of J. B. Crowley, which negligence proximately contributed to the collision. An objection by plaintiffs to this amendment was overruled. Plaintiffs' reply to defendants' answer was a general denial. There is no judgment appearing in the record dismissing The Western Casualty and Surety Company from the action, but the court's order is treated as such.

There is in the abstract no reference to the evidence of three witnesses; the instructions given by the court were eighteen in number, but only three of them appear in the abstract. Neither party has presented a concise, or any, statement of facts for the convenience of the court, and it has, therefore, been necessary for us to read and study a record consisting of more than 850 folios.

The specifications of points presented here are five in number, being, briefly stated, that error was committed by the trial court: 1. In the dismissal of The Western Casualty and Surety Company as a codefendant; 2. in permitting Wayne Keith, a Colorado highway patrolman, to testify as to certain conditions on the highway where the collision occurred; 3. in dismissing Bruce and Jessie Hardman as defendants; 4. in permitting H. E. Hardman to testify as to a certain "experiment"; 5. in permitting defendants to amend their answer. In the light of these specifications, the record has been carefully studied. We find that specifications number 2, 3, 4 and 5 are without merit, and we decline to discuss them. The matter posed in specification number 1 is one of first impression in this jurisdiction, and, because it involves a construction of our Rules of Civil Procedure, and because of its importance in future litigation, it has been given marked attention.

It appears from the record that on August 6, 1948, Bruce, Jessie, H. E. and Kathryn Hardman filed with the Public Utilities Commission of the State of Colorado an application for a certificate to operate a truck, and, in support thereof, filed therewith a so-called partnership agreement in which Bruce and Jessie Hardman are designated as parties of the first part and H. E. and Kathryn Hardman as parties of the second part; the date of this partnership agreement is July 26, 1948, and it was specifically provided therein: " * * * each party agrees to devote an equal amount of time and supply an equal amount of equipment in said business which is to consist of a transportation business hauling ore within a

50 mile radius of Dove Creek and transport pyrites ore from the Silverton area to the Naturita area."

With reference to the proceeds to be derived from the business in which the partnership was to be engaged, we find the following provision: "Each of the parties hereto shall be entitled to share equally in the proceeds of said undertaking or in proportion to the amount of time and equipment furnished by each is used."

There also was filed with said application a financial statement of the individuals comprising the partnership, in which statement the truck involved in the accident and another was listed.

Section 341, chapter 16, '35 C.S.A., provides: "Every commercial carrier by motor vehicle as defined in this subdivision shall file with the commission a liability insurance policy issued by some insurance carrier or insurer, authorized to do business in the state of Colorado, or a surety bond issued by some company authorized to do a surety business in the state of Colorado, in such sum for such protection and in such form as the commission, by its rules and regulations, may deem necessary to adequately safeguard the public interest." It was pursuant to the provisions of said section that The Western Casualty and Surety Company continued in force its liability insurance policy to H. E. and Kathryn Hardman, dated June 25, 1948, upon the truck involved in the accident. This is the only policy in the record.

Attached to the policy is a rider in which it is stated:

"The policy to which this endorsement is attached is written in pursuance of, and is to be construed in accordance with:

"Sections 327 to 347, inclusive, chapter 16, 1935 C.S.A., as amended, and the rules and regulations of the Public Utilities Commission of Colorado adopted thereunder and applicable to the insured. In consideration of the premium stated in the policy to which this endorsement is attached, the insurer agrees to pay any final judgment

within the limits set forth in the policy or endorsements attached thereto, for injury to, and/or death of persons * * *, and damage to property * * * resulting from the ownership, maintenance, or use of any such motor vehicles and/or trailers as are described in said policy, * * *."

There is a paragraph in the policy itself providing:

\* \* \*

"6. * * * No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

"7. * * * No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until thirty days after the required proofs of claim have been filed with the company."

In the complaint plaintiffs charged defendants with negligence so far as the individual defendants were involved; it combined with this cause of action a cause of action against The Western Casualty and Surety Company founded on contract. Under the provisions of the liability insurance policy, supra, in the absence of a "written agreement of the insured, the claimant and the

company" there could be no liability whatever on the part of the insurer unless and until it was definitely and finally determined by a final court judgment that the insured in the policy was guilty of such negligence as entitled plaintiffs to a final judgment, and when that judgment was finally entered, and then only, under the terms of the policy, the successful plaintiffs might maintain an action against the insurer to recover on their final judgment within the limitations of the policy itself.

Section 341, supra, vests the Public Utilities Commission with power to promulgate its rules and regulations for adequate protection of the public interest, and, so far as the record here discloses, no rules or regulations for such purpose have ever been so promulgated. Under these circumstances, if the liability insurance policy here in question was formally approved by the commission, it must be assumed that it afforded the public such protection as was deemed necessary by the commission "to adequately safeguard the public interest." No statute is called to our attention, and none of which we are cognizant, fixes, or attempts to fix, the coverage of liability insurance policies required of commercial carriers other than section 341, supra. We understand that plaintiffs rely upon rules 18 and 20, R.C.P. Colo., as their authorization for making the liability insurance carrier a defendant.

Rule 18 (a), supra, provides for the joinder of claims, and, where there are multiple parties, authorizes the joinder by plaintiffs' compliance with the requirements of rules 19, 20 and 22. An examination of rule 19 discloses that a consideration of its provisions is not necessary in the instant case.

Rule 20 (a) provides, inter alia: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any

question of law or fact common to all of them will arise in the action. * * * A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

Further, plaintiffs direct our attention to rule 20 C (c) upon which they rely and which provides that all persons who are jointly or severally liable upon the same obligation or instrument and sureties on the same or separate instruments, may be sued in the same action at the option of the plaintiff.

It must be conceded that the above rules, as well as all others included in our rules of civil procedure, are procedural, and under them there is no attempt to affect the substantive rights of litigants. This distinction is emphasized, if emphasis was necessary, by the legislative act under which our rules of civil procedure were promulgated. It is therein provided, inter alia, "Such rules shall neither abridge, enlarge, nor modify the substantive rights of any litigants." S.L. '39, c. 80, p. 264. This limitation upon our court by the legislature, assuming its jurisdiction in the matter of court procedure, was, nevertheless, wholly unnecessary because if we or the legislature should attempt to affect the substantive rights of parties to contracts and agreements, such action would be in conflict with the provisions of the federal and state Constitutions and void. No statute has been called to our attention, nor have we found any, which prevents an insurer and insured from entering into any contract which is desired unless it clearly appears that the contract of insurance pertains to a subject matter which is condemned by legislative or other action as against public policy or public morals. It is not here questioned that the legislature may require a common carrier to provide, as a condition precedent to the issuance of any license or permit by the Public Utilities

Commission, a policy conferring upon an injured party the right to sue on such policy. If, however, such legislation is enacted, it would then be entirely optional on the part of any insurance company to refuse to issue its policy containing such a provision. If such legislation so required, it would then be optional on the part of the company issuing the liability insurance policy to comply with the conditions imposed by the legislative act and issue such policy, or it might decline to issue one conditioned as the legislature required. In the absence of legislation, and in accordance with the provisions of the liability insurance policy here in question, plaintiffs were limited thereby and confined thereto as definitely as was the insured and could assert only such rights in accordance with proper statutory authority as were given them under the policy itself. As we have said, neither the statutes nor rules or regulations of the Public Utilities Commission attempt to define any rights whatever in an insured beyond those contained in the policy itself.

Under the provisions of the policy, the liability insurance company obligated itself to render certain services to the insured in connection with the subject matter of the policy; it obligated itself, among other provisions, by the quoted portion of the policy, as we have shown. Here, as we construe these provisions, it was first incumbent upon the plaintiffs, before any rights whatever accrued to them under the provisions of the liability insurance policy, to obtain a final judgment against the insured, judicially determining that they were guilty of negligence resulting in plaintiffs' damage and injury. A judgment thus having been obtained and remaining unsatisfied for the period specified in the policy, supra, then, and then only, would any right accrue to plaintiffs to maintain an action against the liability insurer.

Counsel for plaintiffs here, in support of their position that the trial court erred in dismissing the liability insurance company as a party defendant, cite

*Graves v. Harrington*, 177 Okla. 448, 60 P. (2d) 622; *Milliron v. Dittman*, 180 Cal. 443, 181 Pac. 779. We have examined these decisions, and in each instance find that they are based upon statutes or ordinances adopted prior to the issuance of the policies, and, consequently, the legislation in force at the time of the issuance of the policy became part and parcel thereof as definitely as if written therein.

The precise question here presented is, as we have said, one of first impression in this court, and has received its deserved consideration.

■ We have concluded that the better reasoned and majority rule, which we adopt, is to the effect that where a policy contains a "no-action" clause, such as is here presented, and neither ordinance nor statute otherwise provides, one injured in an accident may not sue the insured and the insurance carrier jointly or the insurance carrier separately, but must first obtain a judgment against the insured, and then and then only, if the provisions of the policy are such as to create a contractual relationship between the insured and the insurer, the injured party's rights against the insurer first ripens into existence. Then the injured party becomes subrogated to the rights of the insured, and within the limits of the policy, may recover. In the present case the substantive rights of The Western Casualty and Surety Company were involved and would have been violated and entirely ignored if the trial court had ruled otherwise than it did on its motion to dismiss. The liability policy was not obnoxious to either existing statutes or rules and regulations of the Public Utilities Commission. Legislation in force and effect at the time of the issuance of the policy becomes an integral part thereof, and, in the absence of legislation, the policy and all rights accruing thereunder are to be construed in accordance with its terms and provisions, and cannot be affected by rules of court or otherwise. *Wheat v. White*, 38 F. Supp. 796; *Kilcoyne v. Trausch*, 222 Wis. 528, 269

N.W. 276; *Farm Bureau Mutual Automobile Ins. Co. v. Hammer,* 177 F. (2d) 793; *Coster v. Coster,* 289 N. Y. 438, 46 N.E. (2d) 509, 146 A.L.R. 702; *Sweitzer v. Fox,* 226 Wis. 26, 275 N.W. 546; *Blessing v. Ocean Accident & Guarantee Corporation, Ltd.,* 152 Ore. 632, 54 P. (2d) 300; *Arsht v. Hatton,* 80 F. Supp. 148; *Burks v. Aldridge,* 154 Kan. 731, 121 P. (2d) 276; *Rhoads v. Perdue,* 239 Ia. 1030, 33 N.W. (2d) 371; *Pavignano v. Atlantic Casualty Ins. Co.,* 14 N. J. Misc. 280, 184 Atl. 614; *Belanger v. Great American Indemnity Co. of N. Y.,* 89 F. Supp. 736; *Firebaugh v. Jumes,* 341 Ill. App. 1, 92 N.E. (2d) 790; *Stearns v. Graves,* 61 Idaho 232, 99 P. (2d) 955; *Arnold v. Walton,* 205 Ga. 606, 54 S.E. (2d) 424; *Jacobs, et ux. v. Gilleylen,* 359 Mo. 987, 224 S.W. (2d) 982; 159 A.L.R. 762; *Jennings v. Beach,* 1 Fed. Rules Decisions (Mass.) 442; 13-14 Huddy, Cyclopedia of Automobile Law (9th ed.), p. 424; p. 70, Supplement thereto.

The judgment is affirmed.