**Lynn K. CASSIDY, Susan K. Ball, and Earl Dean Smith, Plaintiffs,**

v.

**THE MILLERS CASUALTY INSURANCE COMPANY OF TEXAS, the Millers Mutual Fire Insurance Company of Texas, and John Does 1 through 10, Defendants.**

Civ.A. Nos. 94–B–1480, 94–B–1511.

United States District Court,
D. Colorado.

April 2, 1998.

1202

Thomas L. Roberts, Matthew Nelson, Roberts & Zboyan, P.C., Denver, CO, for Plaintiffs Cassidy and Ball.

Bradley A. Levin, Steve E. Abrams, Breit, Best, Levin & Coppola, Denver, CO, for Plaintiff Smith.

Kevin E. O'Brien, Miles M. Dewhirst, Hall & Evans, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants, The Millers Casualty Insurance Company of Texas (Millers Casualty) and The Millers Mutual Fire Insurance Company of Texas (Millers Mutual) (collectively, "Millers"), move to dismiss the claims of plaintiffs, Lynn K. Cassidy (Cassidy) and Susan K. Ball (Ball), pursuant to Fed. R.Civ.P. 12(b)(6). I referred this motion to a magistrate judge for recommendation pursuant to 28 U.S.C. § 636(a) and (b) (1994). The magistrate judge filed an Amended Recommendation on October 6, 1997 (the recommendation), which advises that I grant defendants' motion to dismiss in its entirety. Cassidy and Ball filed timely, specific written objections to the recommendation and Millers have responded to the objections. I review the recommendation *de novo*.

Also pending are: (1) plaintiffs' objection to the December 9, 1997 order of the magistrate judge denying plaintiffs' motion for a continuance and denying plaintiffs' motion to lift the stay of discovery; (2) defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Cassidy and Ball's claim for declaratory relief; and (3) defendants' motion for summary judgment. I address each motion in turn.

## I. BACKGROUND

I derive the following facts from the Second Amended Complaint and the undisputed facts contained in the recommendation (collectively, "the record").

### a. The Routt County Litigation

In August 1988, Cassidy and Ball sued Earl Dean Smith (Smith) in Routt County District Court for negligence, negligent infliction of emotional distress, and outrageous conduct (the Routt County litigation). Cassidy and Ball alleged that Smith, "a trusted family advisor" and their "spiritual counselor," sexually abused them during their childhood and early adulthood. The alleged abuse consisted of, inter alia, Smith engaging in sexual intercourse with Cassidy and Ball, beginning when Cassidy was seventeen and Ball was fifteen and continuing for some time thereafter.

The trial court granted Smith's motion for summary judgment premised on the expiration of the statute of limitations, C.R.S. § 13–80–102 (1987 Repl.Vol. 6A), and dismissed the action. The Colorado Court of Appeals affirmed dismissal as to claims for conduct occurring before August 1982 and reversed dismissal as to claims for conduct occurring after August 1982. *See, generally, Cassidy v. Smith*, 817 P.2d 555 (Colo.App.1991).

On remand, Millers Casualty, pursuant to a homeowner's insurance policy, agreed to defend Smith against Cassidy and Ball, but only under a reservation of rights that purportedly allows Millers Casualty to seek a judicial determination of its indemnity obligation to Smith. The Routt County litigation went to trial and on July 23, 1992, the jury returned a verdict in favor of Cassidy and Ball. The judgment remains unsatisfied and

has a current estimated value approximating $3,000,000.00. Shortly thereafter, but on a date not disclosed by the record, Millers Casualty appealed the judgment entered in the Routt County litigation. Millers Casualty subsequently abandoned the appeal.

### b. Denver County Litigation and Bankruptcy Proceeding

On October 19, 1992, Millers Casualty filed a declaratory judgment action in Denver County District Court against Smith, Cassidy, and Ball (the Denver County litigation). Millers Casualty sought a declaration that it has no duty to indemnify Smith in the Routt County litigation. Millers Casualty never prosecuted the Denver County litigation. On November 30, 1992, Smith filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Colorado (the bankruptcy proceeding). The record does not disclose whether Smith prosecuted his bankruptcy petition.

### c. Adams County Litigation, Texas Litigation, and Litigation in this Court

On June 2, 1994, Cassidy and Ball commenced a civil suit against Millers Casualty in Adams County District Court, alleging six claims for relief: breach of contract, willful breach of contract, bad faith breach of insurance contract, abuse of process, estoppel, and extreme and outrageous conduct. As a basis for these claims, Cassidy and Ball aver that Millers Casualty acted contrary to Colorado law during and after the Routt County litigation. Specifically, Cassidy and Ball allege that Millers Casualty:

(1) reneged an informal settlement agreement before the Routt County litigation went to trial;

(2) refused to engage in good faith settlement negotiations with Cassidy and Ball during the Routt County litigation;

(3) breached a promise to post an appeal bond after the jury returned a verdict in favor of Cassidy and Ball in the Routt County litigation, causing Smith to file for bankruptcy and forcing Cassidy and Ball to prosecute claims in bankruptcy court to protect their rights as creditors;

(4) frustrated Cassidy and Ball's attempts to execute on the judgment;

(5) appealed the Routt County litigation judgment without any basis for appeal and in bad faith;

(6) engaged in post-judgment settlement negotiations of the Routt County litigation in bad faith;

(7) breached contractual duties of indemnification owed to Smith, Cassidy, and Ball, which contractual duties arise from the homeowner's insurance policy;

(8) refused to pay to Cassidy and Ball the amount of the Routt County litigation judgment as well as post-judgment interest; and

(9) instituted the Denver District Court litigation in bad faith and after waiving its reservation of rights.

(Second Am. Compl. ¶¶ 1–49.)

On June 7, 1994, Smith also commenced a civil suit against Millers Casualty in Adams County District Court, alleging eight claims for relief: breach of contract, willful breach of contract, negligence, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, extreme and outrageous conduct, deceptive trade practices, and promissory estoppel. Millers do not move to dismiss Smith's claims pursuant to Fed. R.Civ.P. 12(b)(6).

Millers Casualty removed Cassidy and Ball's Adams County action to this court on June 21, 1994. On removal, the Cassidy and Ball action became Civil Action No. 94–B–1480. On June 24, 1994, Millers Casualty removed Smith's Adams County action to this court, which case became Civil Action No. 94–B–1511. I subsequently consolidated the two cases on August 3, 1994.

On June 8, 1994, days after Smith, Cassidy, and Ball commenced their civil actions in Adams County, Millers Casualty and Millers Mutual filed a declaratory judgment action in the United States District Court for the Northern District of Texas against Smith, Cassidy, and Ball (the Texas litigation). Millers sought a declaration of no duty to indemnify Smith for the Routt County litigation.

Millers also moved to transfer this consolidated case to Texas, which motion I denied on October 11, 1994.

Cassidy and Ball then filed their first amended complaint on January 19, 1995, adding: (1) the allegation that Millers Casualty and Millers Mutual commenced the Texas litigation in bad faith; and (2) Millers Mutual as a defendant. Millers then filed a motion to dismiss all six of Cassidy and Ball's claims pursuant to Fed.R.Civ.P. 12(b)(6) on January 30, 1995. Also on January 30, 1995, Millers filed a counterclaim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 (1994) and Fed.R.Civ.P. 57, seeking a clarification of its obligation to indemnify Smith for the Routt County litigation. I referred Millers' motion to dismiss to the magistrate judge for recommendation on August 6, 1997. The magistrate judge filed the recommendation on October 6, 1997. Cassidy and Ball objected to the recommendation on October 20, 1997.

On October 17, 1997, eleven days after the magistrate judge filed the recommendation, Cassidy and Ball moved to amend their complaint for a second time, which motion I granted. The second amended complaint adds a claim for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R.Civ.P. 57. Otherwise, the second amended complaint is identical to the first amended complaint. On November 10, 1997, Millers moved to dismiss the entirety of Cassidy and Ball's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Millers' November 10 motion to dismiss provided notice that Millers' January 30, 1995 motion, which related to the claims of Cassidy and Ball's first amended complaint, applied equally as well to Cassidy and Ball's second amended complaint. Millers' November 10 motion to dismiss also presents a new motion for dismissal of Cassidy and Ball's claim for declaratory relief. In this diversity action, I have jurisdiction pursuant to 28 U.S.C. § 1332 (1994) and Colorado substantive law governs.

## II. ANALYSIS OF DEFENDANTS' MOTIONS TO DISMISS

Cassidy and Ball filed their second amended complaint on October 17, 1997. As noted above, the second amended complaint is identical to the first amended complaint, except that the second amended complaint states an additional claim for declaratory relief against defendants. Millers renewed their motion to dismiss on November 10, 1997, arguing for dismissal of all seven claims of the second amended complaint. Because I had already referred their January 30, 1995 motion to dismiss to the magistrate judge before Cassidy and Ball filed their second amended complaint, Millers' motion to dismiss Cassidy and Ball's claim for declaratory relief was never referred to a magistrate judge for recommendation. Thus, I address the claims subject to the recommendation separately from defendants' motion to dismiss Cassidy and Ball's claim for declaratory relief.

### a. Standards for Motions to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

Fed.R.Civ.P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988). In reviewing the sufficiency of the complaint, a court must presume that all plaintiff's factual allegations are true and construe them in a light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Meade*, 841 F.2d at 1526.

### b. Claims Subject to the Recommendation

Because Cassidy and Ball filed objections to the recommendation, I review *de novo* the magistrate judge's recommendation as to dispositive issues. 28 U.S.C. § 636(b)(1) (1994); Fed.R.Civ.P. 72(b). In reviewing the recommendation on non-dispositive matters, however, I am bound by the clearly erroneous and contrary to law standard. *Merritt v. International Broth. of Boilermakers*, 649 F.2d 1013, 1016 (5th Cir.

1981); 28 U.S.C. 636(b)(1)(A). For the reasons set forth below, I adopt the recommendation in part and reject the recommendation in part.

The recommendation advises dismissal of Cassidy and Ball's first six claims for relief: bad faith breach of insurance contract, breach of contract, willful breach of contract, promissory estoppel, abuse of process, and extreme and outrageous conduct. Cassidy and Ball object to dismissal of each of these claims except for the abuse of process claim. Accordingly, I adopt the recommendation as to dismissal of Cassidy and Ball's abuse of process claim. I address the other five claims addressed by the recommendation separately.

1. *Bad Faith Breach of Insurance Contract*

Millers argue that Cassidy and Ball, as injured third-party judgment creditors of Smith, do not have standing to sue Millers for bad faith breach of insurance contract. Cassidy and Ball respond that no Colorado appellate opinion addresses whether a judgment creditor of an insured tortfeasor has standing to proceed directly against the tortfeasor's insurer for bad faith breach of insurance contract. Cassidy and Ball contend, however, that the Colorado Supreme Court would recognize their standing under the circumstances presented by this case. The magistrate judge recommends dismissal of this claim on the basis proffered by defendants. I agree.

Whether a defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for the court to resolve. *Bath Excavating & Const. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993) (citations omitted). Pursuant to Colorado law, every contract contains an implied covenant of good faith and fair dealing. C.R.S. § 4–1–203 (1997 Repl.Vol. 2); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). In the past, Colorado restricted actions based upon breach of an implied covenant of good faith and fair dealing to contract damages.

In *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984), however, the Colorado Supreme Court held that an insured could assert a cause of action apart from, and in addition to, contract damages for an insurer's breach of its implied duty to act in good faith. *Trimble* at 1141–1142.

> The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured. The motivation of the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage. The refusal of the insurer to pay valid claims without justification, however, defeats the expectations of the insured and the purpose of the insurance contract. It is therefore necessary to impose a legal duty upon the insurer to deal with its insured in good faith.

*Trimble* at 1141 (citations omitted).

In *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985), the Colorado Supreme Court extended the *Trimble* rationale to third-parties. *Savio* held that a workers' compensation insurance carrier owed a duty of good faith to an injured worker even though the worker was not in privity of contract with the insurance carrier. *Savio* at 1272–1276. The Court reasoned that, because "workers compensation serves the same purpose as insurance in general, the *Trimble* rationale demands that the provider of such compensation deal fairly and in good faith with an employee asserting a compensable injury." *Savio* at 1273. Crucial to the Colorado Supreme Court's decision, however, was the Colorado Workers' Compensation Act's requirement that every contract for workers' compensation insurance "contain a clause to the effect that the insurance carrier shall be directly and primarily liable to the employee." C.R.S. § 8–44–105 (1973). *See Savio* at 1272.

The Colorado Supreme Court has since extended the claim of bad faith breach of insurance contract into other limited contexts. *See Transamerica Premier Ins. Co. v. Brighton School Dist. 27J*, 940 P.2d 348, 350 (Colo.1997) (commercial surety owed duty of good faith to obligee despite absence of privity of contract); *see also Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804 (Colo. 1991) (independent claims adjusting company owed duty of good faith to client's injured employee when investigating and processing the employee's workers compensation claim). Yet Colorado has expressly declined to recognize the claim of bad faith breach of insurance contract in other contexts. *See Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517–518 (Colo. 1996) (insurer's duty of good faith to settle does not encompass duty to protect insured from exposure to punitive damages when insurance contract does not provide indemnity for punitive damages); *see also Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102 (Colo.App.1992) (injured third-party claimant did not have standing to allege bad faith cause of action against tortfeasor's insurer); *Safeco Ins. Co. v. Gonacha*, 142 Colo. 170, 350 P.2d 189 (1960) (personal injury claimant with judgment against insured not entitled to rely on Colorado Financial Responsibility Law if policy not issued under that statute).

In *Schnacker*, the Colorado Court of Appeals held that an injured third-party who entered into a settlement agreement with the tortfeasor could not bring a bad faith cause of action against the tort-feasor's insurer to recover interest on a personal injury settlement award. The Court stated:

> The duty of an insurer to act in good faith when dealing with its insured is recognized and is implied in law as a covenant of the insurance contract. The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insured and insurer. That foundation obviously does not exist for a third party.

*Schnacker* at 104 (citing *Trimble* ). The overwhelming majority of jurisdictions have reached the same conclusion. *See Schnacker*

at 104 (collecting cases); *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 5 (D.C.Cir. 1993) (collecting cases); *see also* Thomas Flaherty et al., Developments in West Virginia's Insurance Bad Faith Law—Where do We Go from Here?, 98 W. VA. L. REV. 267, 300 n. 130 (1995) (collecting cases).

Since *Schnacker*, this court has twice held that, pursuant to Colorado law, insurers do not owe a duty of good faith and fair dealing to injured third-parties. *See Galusha v. Farmers Ins. Exchange*, 844 F.Supp. 1401, 1403–1404 (D.Colo.1994) (Carrigan, J.) (citing *Schnacker* ); *see also Dean v. Allstate Ins. Co.*, 878 F.Supp. 1397, 1400 (D.Colo.1993) (Matsch, J.). "To hold otherwise places the insurer in the untenable position of owing a duty of good faith to both the insured tortfeasor and his adversary." *Galusha* at 1404 (citing *Herrig v. Herrig*, 844 P.2d 487, 491 (Wyo.1992)).

■ Cassidy and Ball concede that Colorado's common law does not extend the duty of good faith and fair dealing to injured third-party claimants. They argue, however, that once an injured third-party claimant becomes a judgment creditor of the insured, the insurer's duty of good faith extends to the injured third-party. Cassidy and Ball argue that Colorado's appellate courts have not yet addressed this specific issue.

In *Steen v. Aetna Cas. and Sur. Co.*, 157 Colo. 99, 401 P.2d 254 (1965), Steen, an injured third-party claimant, obtained a judgment against tortfeasors for personal injuries and property damage resulting from an automobile accident. A liability insurance policy issued by Aetna covered the tortfeasors. The judgment, however, exceeded the policy limit. Following entry of the judgment, Aetna paid into the registry of the court a sum of money equal to the policy limit. Steen then commenced an ancillary garnishment proceeding against Aetna, pursuant to C.R.C.P. 103, in an attempt to compel Aetna to pay for the remainder of the judgment. *Steen*, 157 Colo. at 101–102, 401 P.2d at 254–255. The trial court dismissed the garnishment and, on appeal, the Colorado Supreme Court affirmed:

> Aetna, by virtue of its contract is liable for—and has paid in—the sum of 10,000.00.

If in fact it were negligent and acted in bad faith as to the [tortfeasors], as asserted, such has not as yet been determined. Furthermore, we note that the [tortfeasors] have evidently not complained in court about Aetna's alleged conduct. Should they desire so to complain, it will, perforce, have to be in a tort action not subject to garnishment proceedings, unless and until reduced to judgment. Steen, a stranger to the insurance policy involved, as a garnishor, can have no claim against Aetna, as garnishee, unless and until such transpires.

\* \* \* . \* \* \*

■ *Here Aetna owed no duty to Steen* . . . .

*Steen*, 157 Colo. at 101–102, 401 P.2d at 255 (emphasis added). Hence, *Steen* holds that a third-party claimant who has obtained the status of a judgment creditor of the insured tortfeasor does not have standing to bring a garnishment claim against the tortfeasor's insurer because the tortfeasor's insurer owes no duty to the third-party claimant/judgment creditor. Fairly read, *Steen* stands for the proposition that only the insured tortfeasor has standing to allege bad faith against the insurer. *Id.*

So read, *Steen* is consistent with over-whelming majority of courts in other jurisdictions that hold a judgment creditor of the insured may not proceed directly against an insurer without an assignment of the insured's rights. *See O.K. Lumber Co., Inc. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525–526 (Alaska 1988); *see also Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457, 462 (1985); *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423, *7 (Del.Super.Ct.); *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 258 (Iowa 1991); *Lisiewski v. Countrywide Ins. Co.*, 75 Mich.App. 631, 255 N.W.2d 714, 717 (1977); *Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 830 P.2d 1335, 1336 (1992); *Murray v. Allstate Ins. Co.*, 209 N.J.Super. 163, 507 A.2d 247, 250–251 (1986); *Browdy v. State–Wide Ins. Co.*, 56 Misc.2d 610, 289 N.Y.S.2d 711, 717–718 (N.Y.Sup. 1968); *see generally* 12A George J. Couch et al., COUCH ON INSURANCE §§ 58:4 and 58:6 (2d Rev. ed. 1981 & Supp.1997). Only Mary-land permits a judgment creditor of the insured, pursuant to common law, to proceed directly against the insurer for amounts in excess of the policy limit without obtaining an assignment from the insured. *See Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 344 Md. 399, 687 A.2d 652, 658 (1997). Two other jurisdictions permit direct actions without assignment pursuant to common law, but only for amounts within the policy limits. *See Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 739 (Tenn.1978); *see also Shaheen v. Preferred Mut. Ins. Co.*, 668 F.Supp. 716, 719 (D.N.H.1987) (applying New Hampshire law).

As a matter of public policy, states are free to adopt statutes that permit third-parties to proceed directly against insurers. At least three jurisdictions have held that a judgment creditor of the insured, pursuant to state statutory authority, may bring a bad faith action directly against the insurer for an amount in excess of the policy limit without obtaining an assignment from the insured. *See State Farm Fire & Cas. Co. v. Zebrowski*, 706 So.2d 275, 277 (Fla.1997) (remedy authorized by Florida statute); *see also Moradi–Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58, 64 (1988) (remedy created by California statute); *Esteve v. Allstate Ins. Co.*, 351 So.2d 117, 120 (La.1977) (remedy authorized by Louisiana statute). *But see Gunny v. Allstate Ins. Co.*, 830 P.2d at 1336 (Nevada statute does not entitle judgment creditor to bring separate action directly against insurer); *Murray v. Allstate Ins. Co.*, 507 A.2d at 250–251 (New Jersey statute affords no remedy to third-parties); *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill.2d 458, 141 Ill.Dec. 791, 551 N.E.2d 1319, 1322 (1990) (remedies provided by Illinois' insurance code extend only to the insured party); *Murrell v. Williamsburg Local School Dist.*, 92 Ohio App.3d 92, 634 N.E.2d 263, 265 (Ohio App.12th Dist.1993) (Ohio statute affords no remedies to third-parties). Cassidy and Ball point to no Colorado statute providing them standing to proceed against Millers for bad faith without an assignment of Smith's rights.

Though the majority of jurisdictions do not allow a judgment creditor of the insured to proceed directly against the insurer without

an assignment of rights from the insured, many jurisdictions permit such actions after the insured executes an assignment in favor of the judgment creditor. *See O.K. Lumber Co., Inc. v. Providence Washington Ins. Co.,* 759 P.2d at 525–526; *Ring v. State Farm Mut. Auto. Ins. Co.,* 708 P.2d at 462; *Kooyman v. Farm Bureau Mut. Ins. Co.,* 315 N.W.2d 30 (Iowa 1982); *Levier v. Koppenheffer,* 19 Kan.App.2d 971, 879 P.2d 40, 44 (1994); *Southern General Ins. Co. v. Ross,* 227 Ga.App. 191, 489 S.E.2d 53, 57–58 (1997); *Black v. Goodwin, Loomis and Britton, Inc.,* 239 Conn. 144, 681 A.2d 293, 299 (1996) (citing Appelman, INSURANCE LAW AND PRACTICE § 4690 (1979)); *Lisiewski v. Countrywide Ins. Co.,* 255 N.W.2d at 717; *Murray v. Allstate Ins. Co.,* 507 A.2d at 250–251; *Yassin v. Certified Grocers of Illinois, Inc.,* 141 Ill.Dec. 791, 551 N.E.2d at 1322; *Cianci v. Nationwide Ins. Co.,* 659 A.2d 662, 667 (R.I. 1995). Cassidy and Ball, however, do not allege that they proceed as assignees of Smith. Indeed, Smith brings his own claim for bad faith breach of insurance contract against Millers.

Cassidy and Ball rely primarily on *Thompson v. Commercial Union Ins. Co. of New York,* 250 So.2d 259 (Fla.1971). *Thompson,* however, has been subsequently limited by *Fidelity and Cas. Co. of New York v. Cope,* 462 So.2d 459 (Fla.1985). In *Cope,* the Florida Supreme Court held that, when a third-party claimant executed a release of the insured without obtaining an assignment of the insured's claim for bad faith prior to satisfaction of an excess judgment, the third-party claimant could not maintain an action against the insurer. *Thompson,* therefore, is weak support at best for Cassidy and Ball's contention that they may assert, independent of an assignment, a bad faith action directly against Millers. In view of *Steen* and *Schnacker,* cases relied on by Cassidy and Ball from other jurisdictions are unpersuasive.

In the alternative, Cassidy and Ball argue that they have standing to allege bad faith breach because of their status as "intended third-party beneficiaries of the Millers' insurance contracts pursuant to an express policy provision solely for conduct directed to them by the insurers, not for conduct directed toward Mr. Smith." The policy provision on which Cassidy and Ball rely states:

a. No suit or action shall lie against this Company, unless:

 (1) as a condition precedent thereto there has been full compliance with all of the provisions and stipulations of this policy; and

 (2) the amount of the insured's obligation to pay has been finally determined:

 (a) by judgment against the insured after actual trial ....

 \* \* \* \* \* \*

b. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy *to the extent of the insurance afforded under this policy.*

(Second Am. Compl. ¶ 41 (emphasis added).)

▮ A third-party who is not a signatory to an agreement may enforce one or more of the obligations created by that agreement, but only if the other parties intend the third-party to be a direct beneficiary of one or more obligations of that agreement. *Villa Sierra Condominium Ass'n v. Field Corp.,* 878 P.2d 161, 166 (Colo.App.1994) (*citing Jefferson County School Dist. No. R–1 v. Shorey,* 826 P.2d 830 (Colo.1992)). Cassidy and Ball's third-party beneficiary status is limited, in contract, "to the extent of the insurance afforded under this policy." (Am. Compl.¶ 40.) I cannot construe this policy provision to transform an intended third-party contractual beneficiary status into a right under the policy to sue in tort for damages in excess of policy limits for the underlying loss. Thus, I conclude that neither the policy language nor the circumstances surrounding the insurance contract entitle Cassidy and Ball to proceed directly against defendants in tort for amounts in excess of the policy limits.

Cassidy and Ball also rely on a *All Around Transport, Inc. v. Continental Western Ins. Co.,* 931 P.2d 552, 555 (Colo.App.1996). The Court stated:

First, an insurer, by certifying to a third party that insurance is in effect covering the insured, does not make that third party an intended direct third-party beneficiary of the pertinent insurance policy.

\* \* \* \* \* \*

An injured claimant normally cannot maintain a direct action on the liability policy protecting the tort-feasor. Indeed, such an injured party has no standing even to prosecute a declaratory judgment against a liability insurer. *Farmers Insurance Exchange v. District Court,* 862 P.2d 944 (Colo.1993). This is so because the parties to such an insurance contract do not intend to benefit the general public; their intent is to benefit the named insured by protecting him or her against future liability.

Of course, the General Assembly may, by statute, authorize a third party to institute a direct action against a liability carrier. There is no assertion here, however, that there is any statute that authorizes a direct action by the shipper.

We also conclude that the fact that the shipper here had obtained a judgment against the insured does not require the application of a different rule. It is true that certain of the language in the *Farmers Insurance Exchange* opinion suggests that a sufficient interest for a direct action might vest in the injured party once that party obtains a judgment against the insured. *See Farmers Insurance Exchange v. District Court, supra,* 862 P.2d at 949 ("[A] plaintiff ... who lacks a judgment against the [tortfeasor] and who has no legal rights against the insurance company" lacks standing. "Until [an injured party's] claim is reduced to judgment, she has no legally protected rights or cognizable interest vis-a-vis the insurance companies.").

Here, the shipper had obtained a judgment against the trucking company. However, once such a judgment is obtained, the judgment creditor may seek to apply the proceeds of the liability insurance policy to the satisfaction of that judgment by means of a writ of garnishment served upon the insurer.

This, however, is far different from a direct action upon the policy itself. In pursuing a writ of garnishment, the judgment creditor can assert only the rights of the insured; if the insured has breached a covenant or condition of the policy, the judgment creditor cannot recover. In contrast, a third-party beneficiary asserts independent rights and may not be bound by an insured's breaches. We presume, therefore, that the language used by the court in the *Farmers Insurance Exchange* opinion was a simple recognition that, once the injured party becomes a judgment creditor, that party has standing to prosecute garnishment proceedings against the insurer and to litigate any policy issues that may arise during the course of those proceedings. We do not construe that language as conferring standing upon an injured claimant with a judgment to commence a direct contract action as a third-party beneficiary on the liability policy itself, absent an explicit policy or statutory provision allowing such an action.

*All Around Transport* at 556–557 (citations omitted). *All Around Transport* does not address whether Cassidy and Ball may proceed directly against Millers in tort for amounts exceeding the policy limits. The third-party in *All Around Transport* sought to recover an amount within the policy limits and sued in contract, not in tort. *Id.* at 555.

Because Cassidy and Ball, pursuant to Colorado common law and without an assignment of Smith's rights, attempt to proceed directly against Millers in tort for an amount in excess of the policy limits, I hold that Cassidy and Ball do not have standing to maintain an action against Millers for bad faith breach of insurance contract. Accordingly, I adopt the recommendation of the magistrate judge as to this claim.

### 2. Breach of Contract and Willful Breach of Contract

Cassidy and Ball allege that defendants breached multiple contracts. First, Cassidy and Ball aver that they are intended third-party beneficiaries of several insurance contracts and that Millers breached these contracts by failing to satisfy the judgment

Cassidy and Ball obtained against Smith. Second, Cassidy and Ball contend that they are intended third-party beneficiaries of Millers' promise to post an appeal bond for Smith after judgment entered in the Routt County litigation. I address the alleged insurance contracts and the alleged promise to post a bond separately.

### A. Breach of Insurance Contracts

Millers move for dismissal of Cassidy and Ball's claims for breach of insurance contract and willful breach of insurance contract. Millers argue that Cassidy and Ball, as judgment creditors, may only maintain an action for declaratory relief. The recommendation summarily recommends dismissal of Cassidy and Ball's contractual claims "for the same reasons discussed above" regarding their bad-faith claim. (Am. Recomm. at 7.) Cassidy and Ball object to the recommendation and contend that they have standing as intended third-party beneficiaries of the insurance policies.

■ An insurance policy is a contract, the interpretation of which is generally consistent with established principles of contract law. *American Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 953 (Colo.1991) (citation omitted). A person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the third party, provided that such benefit is direct and not merely incidental. *E.B. Roberts Const. Co. v. Concrete Contractors, Inc.,* 704 P.2d 859, 865 (Colo.1985). The intent to benefit the third party must be apparent from the agreement's terms, the surrounding circumstances, or both. *Id.*

In *Crowley v. Hardman Bros.,* 122 Colo. 489, 223 P.2d 1045 (1950), the Colorado Supreme Court interpreted policy language similar to the policy language at issue here and concluded:

.. there could be no liability whatever on the part of the insurer unless and until it was definitely and finally determined by a final court judgment that the insured in the policy was guilty of such negligence as entitled plaintiffs to a final judgment, and when that judgment was finally entered,

and then only, under the terms of the policy, the successful plaintiffs might maintain an action against the insurer to recover on their final judgment within the limitations of the policy itself.

*Crowley,* 122 Colo. at 497, 223 P.2d at 1048–1049. Courts in other jurisdictions applying similar common law have construed similar policy language as creating intended third-party beneficiary status to judgment creditors suing in contract for amounts within policy limits. *See Lisiewski v. Countrywide Ins. Co.,* 255 N.W.2d at 717; *see also Lewis v. Home Ins. Co.,* 314 A.2d 924, 926 (Del.Super.Ct.1973).

■ Here, the policy language explicitly states: "Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded under this policy." (Second Am. Compl. ¶ 41.) Though this policy language does not afford Cassidy and Ball standing to sue in tort for amounts exceeding the policy limit, this language clearly affords them standing to sue in contract for amounts within the policy limit. Therefore, Cassidy and Ball's claim for breach of contract and willful breach of contract state claims upon which relief can be granted. *See also Farmers Ins. Exchange v. District Court for Fourth Judicial Dist.,* 862 P.2d 944, 948 (Colo.1993). Accordingly, I reject the recommendation for dismissal of Cassidy and Ball's claims for breach of contract and willful breach of contract.

### B. Alleged Breach of Promise to Post Appeal Bond

Millers also move for dismissal of Cassidy and Ball's breach of contract claims regarding Millers' alleged failure to post an appeal bond after judgment entered in the Routt County litigation. In their briefs in support of dismissal, however, Millers frequently refer to extrinsic evidence outside the pleadings, including documents attached to the complaint and documents submitted as exhibits to its motion to dismiss. Indeed, Millers filed a "binder" of 25 documents in support of

their motion to dismiss. In their response briefs, Cassidy and Ball also refer to extrinsic evidence. The recommendation also refers to and relies on extrinsic evidence. (Am. Recomm. at 7 (referencing Ex. D to First Am. Compl. and Ex. E to Second Am. Compl.).)

■ Pursuant to Fed.R.Civ.P. 12(b), courts must either exclude evidence presented outside the pleadings or treat a motion to dismiss referencing extrinsic evidence as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, which of course mandates notice and application of a different standard. The recommendation erroneously relies on extrinsic evidence without treating the motion to dismiss as a Fed.R.Civ.P. 56 motion and providing the requisite notice of conversion. In accordance with Fed.R.Civ.P. 12(b), I exclude all evidence presented outside the pleadings to arrive at a ruling on these claims.

■ The second amended complaint states a cognizable claim for breach and willful breach of defendants' promise to post an appeal bond. The elements for a breach of contract claim in Colorado are: (1) existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform contract by defendants; and (4) damages to plaintiff. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.1992). "Willful breach of contract" is not separate and distinct from a breach of contract claim. Rather, "willful breach" is an intentional breach of contract involving willful, wanton, or insulting conduct without any legal justification or excuse, the natural and proximate consequence of which is mental suffering. *See, generally, Decker v. Browning–Ferris Industries of Colorado, Inc.,* 931 P.2d 436 (Colo.1997); C.J.I.3d § 30:48. Cassidy and Ball's second amended complaint sufficiently alleges the existence of an express oral contract with Millers, Millers' failure to perform such contract in a willful, wanton, and insulting manner without legal justification, and damages incurred from the alleged breach. (Second Am. Compl. ¶ 60.) Accordingly, I reject the recommendation and I deny defendants' motion to dismiss Cassidy and Ball's breach and willful breach

of contract claims as to the alleged oral promise to post an appeal bond after judgment entered in the Routt County litigation.

### 3. *Promissory Estoppel*

■ As their fifth claim for relief, Cassidy and Ball allege that they relied to their detriment on Millers' oral promise to post an appeal bond in the Routt County litigation. Miller moves for dismissal, contending that no evidence of justifiable, detrimental reliance exists. As with the breach and willful breach of contract claim based on the alleged promise to post an appeal bond, the recommendation erroneously refers to and relies on evidence outside the pleadings. (Am. Recomm. at 10–12 (citing Exs. 14, 15, 17 and 19 to Def.'s Brf.).) Accordingly, I exclude all evidence presented outside the pleadings and address the motion pursuant to Fed.R.Civ.P. 12(b).

In *Kiely v. St. Germain,* 670 P.2d 764, 767 (Colo.1983), the Colorado Supreme Court adopted the principles articulated by section 90(1) of the Restatement of Contracts. That section provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

RESTATEMENT (SECOND) OF CONTRACTS § 90(1). "The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." *Kiely* at 767.

Fairly read, Cassidy and Ball's second amended complaint alleges that Millers promised that it would post an appeal bond. The complaint sufficiently alleges a promise, detrimental reliance, and damages. (Second Am. Compl. ¶ 18). Thus, the second amended complaint states a claim for promissory estoppel. Accordingly, I reject the recommendation as to this claim and deny Millers'

motion to dismiss Cassidy and Ball's promissory estoppel claim.

### 4. *Extreme and Outrageous Conduct*

In their sixth claim for relief, Cassidy and Ball allege that Millers engaged in extreme and outrageous conduct. Millers move to dismiss this claim, contending that Millers' alleged conduct does not satisfy the threshold test of outrageousness. On *de novo* review, I conclude the magistrate erred in recommending dismissal of this claim.

Though the Colorado Supreme Court recognized the tort of intentional infliction of emotional distress, modeled on section 46 of the Restatement of Torts, the court has limited relief to situations where the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970); *accord Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1523 (D.Colo.1987).

 The question whether certain conduct rises to the level of outrageousness is ordinarily a question of fact for the trier of fact. However, I must determine, in the first instance, whether reasonable persons could differ on the outrageousness issue. *Simmons v. Prudential Ins. Co. of America*, 641 F.Supp. 675, 683 (D.Colo.1986) (citations omitted). In *Rawson v. Sears Roebuck & Co.*, 530 F.Supp. 776, 780 (D.Colo.1982), *rev'd on other grounds*, 822 F.2d 908 (10th Cir. 1987), Judge Kane determined that a plaintiff must establish a certain minimum threshold level of conduct to state a cause of action for outrageous conduct. To meet this threshold, the plaintiff must allege either that: (1) defendant has engaged in a pattern of conduct that was intended to cause or recklessly did cause severe emotional distress; or (2) if the incident is isolated, defendant blatantly and severely harassed plaintiff. *Rawson* at 780; *accord Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. 240, 244 (D.Colo.1986).

Here, Cassidy and Ball assert that Millers: (1) acknowledged in July 1992 that the insurance policies at issue provide coverage for the Routt County litigation (Second Am. Compl. ¶ 22); (2) promised to post an appeal bond after judgment entered in the Routt County litigation and failed to do so (Second Am. Compl. ¶¶ 27 and 30); (3) intentionally forced Cassidy and Ball into vexatious and frivolous litigation in four different courts after the Routt County litigation concluded (Second Am. Compl. ¶¶ 28, 36, 37, 46); and (4) negotiated in bad faith, employing arbitration as an "abusive and delaying" tactic (Second Am. Compl. ¶¶ 38–40). These allegations are sufficient to withstand the motion to dismiss.

 In addition, Millers' conduct can be regarded as outrageous in view of the vulnerable mental condition of Cassidy and Ball. (Second Am. Compl. ¶ 71.) An actor's knowledge that another person is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity, may render the conduct extreme and outrageous. The conduct may become "heartless, flagrant, and outrageous" when the actor proceeds in the face of such knowledge. RESTATEMENT (SECOND) OF TORTS § 46, comment f; *see also Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo.App.1982). I conclude that Cassidy and Ball sufficiently allege that Millers engaged in a pattern of conduct that was intended to cause or recklessly did cause severe emotional distress, especially considering Millers' knowledge of Cassidy and Ball's alleged mental fragility. Accordingly, I reject the recommendation as to this claim and deny Millers' motion to dismiss Cassidy and Ball's claims for extreme and outrageous conduct.

### 5. *Conclusion Regarding the Recommendation*

In conclusion, I adopt in part and reject in part the recommendation. I adopt the recommendation for dismissal of Cassidy and Ball's claims for bad faith breach of insurance contract and abuse of process. I reject, however, the recommendation for dismissal as to Cassidy and Ball's claims for breach and willful breach of contract, promissory estoppel, and extreme and outrageous conduct.

#### c. Defendants' Motion to Dismiss Cassidy and Ball's Claims for Declaratory Relief

Millers also move to dismiss Cassidy and Ball's claim for declaratory relief pursuant to Fed.R.Civ.P. 12(b)(6). Millers did not object to Cassidy and Ball's amendment of their complaint to include a claim for declaratory relief. Rather, Millers encouraged such amendment. (Defs.' Ltd. Opp'n to Plfs.' Mot. to Am. Compl. of 10/21/97.) Millers move to dismiss Cassidy and Ball's claims for declaratory relief, however, only to the extent that Cassidy and Ball "seek damages not allowed ...." (Defs.' Mot. to Dismiss Plfs.' Second Am. Compl. at 3.) The paragraph of the second amended complaint at issue states:

> Plaintiffs request this honorable Court to declare their rights with respect to the liability policies Millers issued to Smith and other legal relations which they may have to Millers as Smith's liability insurer and find that the liability policies separately provide coverage and other benefits for some or all of their outstanding judgments within or in excess to available aggregate policy limits and benefits.

(Second Am. Compl. ¶ 77.) Paragraph 77 is a general prayer for relief relating to Cassidy and Ball's claim for declaratory relief. (Second Am. Compl. ¶¶ 73–77.)

Courts are not bound by the prayer for relief and may grant only such part of the relief prayed for that courts have authority to grant. Fed.R.Civ.P. 54(c); accord Blizzard v. Penley, 186 F.Supp. 746, 751 (D.Colo.1960). The prayer for relief is not part of the cause of action, and parties are entitled only to such relief as the pleadings support. Daniels v. Thomas, 225 F.2d 795, 797 (10th Cir.1955); accord Schoonover v. Schoonover, 172 F.2d 526, 530 (10th Cir. 1949). While a plaintiff is charged with a duty of giving a short and plain statement of the asserted claims and a demand for judgment and relief, Fed.R.Civ.P. 8, the test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand. Thus, the only issue on a motion dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded. Asphaltic Enterprises,

Inc. v. Baldwin–Lima–Hamilton Corp., 39 F.R.D. 574, 576 (E.D.Pa.1966); accord Falk v. Levine, 60 F.Supp. 660, 663 (D.C.Mass. 1945) (citations omitted). I deny, therefore, Millers' motion to dismiss Cassidy and Ball's claim for declaratory relief. The issue of appropriate damages is properly addressed by a motion pursuant to Fed.R.Civ.P. 50 or 56.

### III. ANALYSIS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR A CONTINUANCE

On October 20, 1997, Millers filed a motion for summary judgment on their counterclaims for declaratory judgment. Before moving for summary judgment, Millers filed a motion to stay discovery on August 21, 1997. As grounds for a stay of discovery, Millers argued that its motion to dismiss was pending and that Millers would soon file a motion for summary judgment that would present purely legal issues. Millers contended, therefore, that conducting discovery imposed an undue burden on Millers and jeopardized the "just, speedy, and inexpensive" determination of this action. (Defs.' Mot. to Stay Disc. at 3.)

Cassidy and Ball opposed the stay. They argued that: (1) discovery had never commenced because the court had not yet ruled on Millers' motion to dismiss; (2) resolution of Millers' motion for summary judgment would not affect their claims for breach of contract, willful breach of contract, promissory estoppel, or extreme and outrageous conduct; and (3) resolution of Millers' motion for summary judgment on its counterclaim for declaratory relief would involve factual issues in addition to legal issues. (Plfs.' Joint Resp. to Defs.' Mot. to Stay Disc. at 2–7.) Over these objections, the magistrate judge granted a stay of discovery on September 29, 1997, pending the issuance of a ruling on Millers' motion to dismiss and pending Millers' filing of a motion for summary judgment. (Ord. of 9/29/97 at 1.)

On November 12, 1997, three weeks after Millers filed its motion for summary judgment and five weeks after the magistrate judge filed the recommendation on Millers'

motion to dismiss, Cassidy and Ball moved for a continuance to respond to Millers' motion for summary judgment pursuant to Fed. R.Civ.P. 56(f) and submitted supporting affidavits. They argued that, because they had not yet conducted discovery, they could not present facts essential to justify their opposition to Millers' motion for summary judgment.

On December 9, 1997, the magistrate judge entered an order denying the motions for a continuance and to lift the stay of discovery. The magistrate judge held that Cassidy and Ball waived any right to seek a continuance or reopen discovery when they failed to file written objections to his September 29 order granting a stay of discovery. The magistrate judge also determined that Millers' motion for summary judgment raises purely legal issues that require no discovery. (Ord. of 12/9/97 at 1.) In his December 9, 1997 order, the magistrate judge also stated: "Should the Court determine that there is a factual issue or rule for the plaintiff on the terminology of the insurance policy, discovery will be permitted." (Ord. of 12/9/97 at 1.) Cassidy and Ball then filed an objection to the magistrate judge's December 9, 1997 order.

■■■■ Cassidy and Ball argue that resolution of Millers' motion for summary judgment implicates factual as well as legal issues. Primarily, they contend that Millers waived the right to contest liability for the Routt County litigation. Certainly, waiver presents a mixed question of law and fact. Further, Millers' motion for summary judgment frequently references matters outside the pleadings, including provisions of the insurance policies at issue and transcripts of Routt County litigation trial testimony. (Defs.' Mot. Summ. J. Opening Brf. at 7–13.) I conclude, therefore, that resolution of Millers' motion for summary judgment will require review of factual issues. Additionally, I agree with Cassidy and Ball that they could not have waived their right to move for a continuance pursuant to Fed.R.Civ.P. 56(f) before Millers filed their motion for summary judgment on October 17, 1996. Moreover, it is clear that the complexion of this case has changed in view of this order. Discovery should proceed on all remaining claims. Accordingly, I vacate the magistrate judge's December 9 order pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), grant the motion for a continuance pursuant to Fed.R.Civ.P. 56(f), and lift the stay of discovery. Because this order resolves Millers' motion to dismiss, the parties may conduct discovery in accordance with the Federal Rules of Civil Procedure as to any viable claim or counterclaim.

Accordingly, I ORDER that:

1) the magistrate judge's recommendation of October 6, 1997 is ADOPTED in part and REJECTED in part;

2) defendants' motion to dismiss is GRANTED in part and DENIED in part;

3) the third and fourth claims for relief of plaintiffs Cassidy and Ball are DISMISSED with prejudice;

4) defendants' motion to dismiss is otherwise DENIED;

5) defendants' motion for summary judgment is HELD IN ABEYANCE;

5) plaintiffs' motion for a continuance pursuant to Fed.R.Civ.P. 56(f) is GRANTED up to and including June 31, 1998;

6) the stay of discovery is LIFTED;

7) pursuant to the general order of reference entered August 8, 1997, the magistrate judge SHALL CONVENE a further scheduling conference, ENTER a scheduling order, and PROCEED in accordance with the designations of the general order of reference.