981 P.2d 145 (1999)
In re the PEOPLE of the State of Colorado, In the Interest of B.C., Minor Child, and
Mohammed Alahmad, n/k/a Mike Alahmad, Petitioner,
and concerning, Christy Collins, n/k/a Christy Farrell; and Leslie P. CollinS-Hart, n/k/a Leslie P. Collins-Pottebaum, Respondents.
No. 99SA127.
Supreme Court of Colorado, En Banc.
May 21, 1999.
*146 Randy C. Canney, Virginia G. Brannon, Denver, Colorado, Attorneys for Mohammed Alahmad.
Jon Slaughter Pelegrin & Associates, P.C. Jon Slaughter Pelegrin, Lakewood, Colorado, Attorneys for Leslie P. Collins-Pottebaum.
Justice BENDER delivered the Opinion of the Court.
In this original proceeding, we hold that a district court possesses the authority to issue a writ in the nature of ne exeat, which is designed to prevent a person from leaving the court's jurisdiction.
Leslie Collins-Pottebaum, Petitioner in this court and Respondent below, requested a writ and bond ne exeat addressed to her granddaughter's father, who is Respondent in this court and Petitioner below.[1] Father took the child to Jordan for an extended period of time, in violation of a court order granting weekly visitation to grandmother and forbidding father from taking the child to Jordan permanently. The district court then granted legal custody of the child to grandmother, who lives in Colorado. Father has been serving a prison sentence in Colorado, but the child remains in Jordan today. Grandmother alleges that the writ is necessary because there is a strong possibility that *147 father will evade the contempt citation currently pending against him by fleeing to Jordan when he is released from prison. The district court denied grandmother's motion on the grounds that this court abolished the authority of district courts to issue writs of ne exeat when it enacted C.R.C.P. 106, which states that all forms of remedial writs are abolished. Grandmother filed a Petition for Writ of Mandamus with this court, and we issued a rule to show cause. We hold that C.R.C.P. 106 merely abolished the form and not the substance of remedial writs such as the writ of ne exeat. Therefore, we make the rule absolute, and we remand this case to the district court to decide grandmother's request on its merits.

I. FACTS AND PROCEEDINGS BELOW
Leslie Collins-Pottebaum raised B.C., her granddaughter, until B.C. was seven years old. At that time, the district court granted custody of B.C. to her father, Mohammad Alahmad, a native Jordanian. The district court specified that grandmother would have visitation rights of one day per week. The district court also ordered that although father was authorized to take B.C. to Jordan for vacations, he was not allowed to permanently remove the child from the State of Colorado.
In July 1996, approximately three years after the court decreed this custody arrangement, father took B.C. to Jordan, and she has remained there ever since. Jordan is not a signatory to the Hague Convention, which generally provides a mechanism by which parents may resolve international custody disputes.
In March 1997, the district court granted legal custody of B.C. to grandmother. In December 1998, father was convicted of the crime of International Parental Kidnapping in violation of 18 U.S.C. § 1204 (1998) in the United States District Court for the District of Colorado. He began serving his sentence of imprisonment at the federal correctional institution located in Englewood, Colorado.
In May 1998, at grandmother's request, the district court issued a citation for contempt against father for violating the court's custody orders. Hearings on the contempt citation were continued on several occasions. The February 1, 1999, hearing date was continued on the court's own motion and reset for March 29, 1999. Grandmother then filed a motion in the district court titled "Forthwith Motion for Writ and Bond Ne Exeat," which is the focus of this appeal. In this motion, grandmother alleged that father could potentially be released from the federal correctional facility to a halfway house on February 13, 1999 and would become eligible for early release on June 3, 1999.
On February 8, 1999, the district court denied grandmother's motion for a writ of ne exeat, concluding that it lacked the authority to issue such a writ because "the Supreme Court abolished that authority by enacting C.R.C.P. 106 which states that all forms of remedial writs are abolished."
Because father obtained new counsel, the date for the contempt hearing was continued to May 28, 1999.
Pursuant to C.A.R. 21, grandmother filed a Petition for Writ of Mandamus with this court to address whether district courts possess the authority to grant a writ in the nature of ne exeat pursuant to section 13-1-115, 5 C.R.S. (1998), and therefore whether the district court must consider grandmother's request on its merits. On April 15, 1999, we issued an order and rule to show cause. Concluding that C.R.C.P. 106 abolished only the form and not the substance of the writ of ne exeat, we now make the rule absolute.

II. ANALYSIS
In this case, the district court did not consider grandmother's request for a writ of ne exeat on its merits; rather, the district court denied the request for the writ on the grounds that it lacked the authority to issue such a writ. Necessarily, then, our review of this case is limited to the sole issue of whether the district court does have the authority to grant grandmother's motion for a writ of ne exeat and therefore is required to consider the merits of her request. In concluding that the district court does indeed have the authority to issue a writ in the nature of ne *148 exeat, we make no assessment of the merits of grandmother's request.

A. THE WRIT OF NE EXEAT
We begin with a brief review of the writ of ne exeat as background to our analysis.
The writ of ne exeat is a writ "which forbids the person to whom it is addressed [from leaving] the country, the state, or the jurisdiction of the court." Black's Law Dictionary 1031 (6th ed.1990). Thus, at common law, the writ of ne exeat was an extraordinary writ in the nature of equitable bail:[2]
Ne exeat provided a preemptive remedy to prevent flight from a jurisdiction in order to avoid paying a judgment or to avoid contempt proceedings for failure to comply with a coercive decree. To invoke ne exeat, a litigant would apply to an equity court for an order requiring a defendant to remain within the jurisdiction. The writ was commonly directed to a sheriff to require the defendant to post sufficient security that he would not depart the territory without leave of the court, in an amount sufficient to satisfy the plaintiff's interest, or be imprisoned.
Polly J. Price, Full Faith and Credit and the Equity Conflict, 84 Va. L.Rev. 747, 800-01 (1998). "Ne exeat is not in itself a remedy," but rather is "a means to effectuate a remedy by keeping a party within the jurisdiction of the court." 57 Am.Jur.2d Ne Exeat § 2 (1988); see also 65 C.J.S. Ne Exeat § 1.b. (1986).
Because a writ of ne exeat is an infringement on the liberty interest of the party against whom it is issued, "the writ `is to be granted with caution' and `is to be continued in force with caution.'" Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 349 (1st Cir.1997). It has been said that "[t]he writ of ne exeat is not frequently issued, because the occasion for its demand seldom arises." Greene v. Greene, No. C.A. 89-392-II, 1990 WL 56197, at *2 (Tenn.App. May 4, 1990).
The writ of ne exeat "may issue only from the necessities of a given case and to prevent a failure of justice." 65 C.J.S. Ne Exeat § 1 (1986). "In order to sustain an application for the writ there must be a probable or threatened departure of defendant from the state or the country generally with intent to evade jurisdiction." Id., § 4; see also 57 Am.Jur.2d Ne Exeat § 9.
Although writs of ne exeat are generally issued in the context of pecuniary disputes, they are not limited to that context. See Palmer v. Palmer, 84 N.J. Eq. 550, 95 A. 241 (N.J.Ch.1915) (issuing a writ of ne exeat against a mother facing contempt proceedings for allegedly disobeying a court order by refusing her child's father access to the child and by taking the child out of state).[3]

B. AUTHORITY OF DISTRICT COURTS IN NE EXEAT PROCEEDINGS
The district court denied grandmother's request for a writ of ne exeat on the ground that it lacked the authority to grant such relief because the writ had been abolished by C.R.C.P. 106, notwithstanding the statutory reference to the writ at section 13-1-115. We disagree, and therefore we hold that the district court is required to consider grandmother's request on its merits.
Under C.R.C.P. 106(a), adopted in 1941, "[s]pecial forms of pleadings and writs in habeas corpus, mandamus, quo warranto, certiorari, prohibition, scire facias, and proceedings for the issuance of other remedial writs, as heretofore known, are hereby abolished in the district court."
In 1953, the General Assembly enacted legislation expressly authorizing district *149 courts to issue relief in the nature of ne exeat:
13-1-115. Courts may issue proper writs. The courts have power to issue all writs necessary and proper to the complete exercise of the power conferred on them by the constitution and laws of this state. The district courts have authority in ne exeat proceedings according to the usual practice in such cases in courts of chancery.
§ 13-1-115, 5 C.R.S. (1998).
We appreciate the district court's difficulty in attempting to harmonize the wording of Rule 106 with the grant of authority contained in section 13-1-115. However, in our view, Rule 106 only abolished the remedial writs in the sense that it abolished the technical pleading requirements of the writs that existed before the rule was promulgated. Thus, we have held that the substance of the writ of mandamus, for example, survived intact following the institution of Rule 106 in 1941:
While Rule 106 . . . "abolishes the special form of pleading," writ and name of the remedy theretofore known as mandamus, the substantive aspects of such proceedings are preserved, and relief of the same nature as was formerly provided in mandamus actions may be granted in accordance with precedents established under the old practice.
North Poudre Irrigation Co. v. Hinderlider, 112 Colo. 467, 474, 150 P.2d 304, 308 (1944).[4] As we noted in Berryman v. Berryman, 115 Colo. 281, 283, 172 P.2d 446, 447 (1946), Rule 106 undertook to abolish the forms of writs in order to prevent the problem of cases being dismissed on the sole basis of failure to comply with the special pleading requirements associated with the writs.
Specifically with reference to the writ of ne exeat, this court has previously held that the abolition of the form of common law writs in Rule 106 did not eliminate the authority of a district court to grant a writ in the nature of ne exeat:
There is no merit in the contention of counsel that the court in the civil action was without authority to issue a writ in the nature of ne exeat upon proper showing that such a writ would be for the protection of the interests of the litigant. The rules of civil procedure are not to be read otherwise.
Struble v. Hicks, 123 Colo. 16, 21, 224 P.2d 932, 934 (1950).
Thus, we conclude that Rule 106 does not abrogate the authority vested in district courts, previously under the common law and currently by statute, to grant a writ in the nature of ne exeat where appropriate.[5]
We reiterate that we make no assessment of the merits of grandmother's particular application for a writ in the nature of ne exeat. Whether grandmother's request for a writ in the nature of ne exeat shall be granted is a decision that rests in the sound discretion of the district court. In light of the time-sensitive nature of the issues in this case, we encourage the district court to make its ruling on the merits of grandmother's request forthwith.

III. CONCLUSION
We conclude that the district court does have the authority to issue a writ in the nature of ne exeat. Therefore, we make the rule to show cause absolute, and we remand this case to the district court for a ruling on *150 the merits of grandmother's request for a writ in the nature of ne exeat.
NOTES
[1] To avoid confusion, we will hereafter refer to the parties as grandmother and father.
[2] See 65 C.J.S. Ne Exeat § 1.b. (1986).
[3] As the Palmer court noted, it is the very nature of chancery to respond flexibly to novel situations when applying equitable principles:

Assuming that there is no precedent for the issuance of a ne exeat to keep a parent within this state to answer the exigencies of an order for access to a minor child by the other parent, no obstacle to the jurisdiction of this court to order the issuance of the writ is presented, for chancery will make a precedent to fit a case, novel in incident, which comes within some head of equity jurisdiction.
Palmer, 95 A. at 242.
[4] See also People ex rel. Mijares v. Kniss, 144 Colo. 551, 553, 357 P.2d 352, 353 (1960). This interpretation of Rule 106 is consistent with the general principle that the rules of civil procedure are procedural and do not attempt "to abridge, enlarge, nor modify the substantive rights of any litigants." Crowley v. Hardman Bros., 122 Colo. 489, 498, 223 P.2d 1045, 1049 (1950).
[5] Father argues in the alternative that a writ in the nature of ne exeat may not be entered against him because such relief is not encompassed by C.R.C.P. 107, which governs contempt proceedings. This argument misapprehends the nature of ne exeat relief. Ne exeat is not a remedy in itself, but rather is a means of effectuating a remedy  in this case, contempt. See section II.A., supra. Thus, the district court may determine that a writ in the nature of ne exeat is appropriate as a means of ensuring that father does not depart from the jurisdiction of the court and thereby evade the hearing on whether he should be held in contempt.