987 F.2d 1467
 25 Fed.R.Serv.3d 285
 Patricia L. BUELL, Plaintiff-Appellee,
v.
SECURITY GENERAL LIFE INSURANCE COMPANY, an Oklahoma
corporation, Defendant-Appellant,
and
American Life and Casualty Insurance Company, an Iowa
corporation; American Marketing Services, Inc., formerly
known as BeneCenter of Colorado, Inc., doing business as
BeneCenter of Colorado, Inc., an Arizona corporation;
BeneCenter of Colorado, Inc., a Colorado corporation, Defendants.
Patricia L. BUELL, Plaintiff-Appellant,
v.
SECURITY GENERAL LIFE INSURANCE COMPANY, an Oklahoma
corporation; American Life and Casualty Insurance Company,
an Iowa corporation; American Marketing Services, Inc.,
formerly known as BeneCenter of Colorado, Inc., doing
business as BeneCenter of Colorado, Inc., an Arizona
corporation; BeneCenter of Colorado, Inc., a Colorado
corporation, Defendants-Appellees.
 Nos. 92-1038, 92-1063, 92-1040 and 92-1058.
 United States Court of Appeals,
Tenth Circuit.
 March 3, 1993.
Rehearing Denied May 19, 1993.
 
 John A. Cimino, P.C., Denver, CO, for plaintiff-appellant.
 Michael A. Williams and Steven D. Plissey of Williams, Youle & Koenigs, P.C., Denver, CO, and Thomas M. Herlihy of Kelly Herlihy & Bane, San Francisco, CA, for defendants-appellees.
 Before TACHA and BALDOCK, Circuit Judges, and BROWN,* Senior District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Patricia Buell, the plaintiff in the district court, brought suit against her health insurance provider, Security General Life Insurance Co., seeking a declaratory judgment that she is covered under her policy and seeking damages for breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and outrageous conduct. The district court entered a declaratory judgment against defendant-appellant/cross-appellee Security General finding that the policy at issue was ambiguous and should therefore be construed in favor of coverage for plaintiff. 779 F.Supp. 1573. Memorandum Opinion and Order at 1-2, Appellant's App., Vol. II at B432-33. Defendant appeals from this judgment. The court further held that, because defendant had continued to provide benefits to plaintiff during the course of the litigation, there had been no breach of contract, and that plaintiff had failed to demonstrate the presence of issues of material fact regarding her claims of breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and outrageous conduct. Id. at B433. Plaintiff appeals the district court's grant of summary judgment to defendant on those issues, as well as the district court's refusal to consider her additional evidence offered pursuant to Fed.R.Civ.P. 59(e). 784 F.Supp. 1533.[1]
 
 
 2
 In 1983, American Life and Casualty Insurance Company (American Life) delivered to Consumer Health Care Association (CHCA) a group health insurance policy. In 1984, plaintiff was issued a Certificate of Group Insurance as evidence of the insurance provided under the policy. Defendant Security General later purchased from American Life the rights and insurance liability risks represented by the policy.
 
 
 3
 In 1986, plaintiff was diagnosed with lung cancer, and in 1990, defendant terminated the group policy. Plaintiff brought a declaratory judgment action arguing that her benefits should continue despite this termination. The district court correctly concluded that, with regard to the coverage issue, the determining factor was whether the policy is one for "expenses" or one for "injury." Id. at B436. If the policy is one for expenses, defendant is liable for medical and hospital related expenses as those expenses are incurred, and plaintiff loses the right to benefits when the policy terminates. Lister v. American United Life Ins. Co., 797 P.2d 832, 834 (Colo.Ct.App.1990). Alternatively, if the policy is an "injury" policy, it covers expenses arising from a covered injury if that injury occurs while the policy is in force. See Loesekan v. Benefit Trust Life Ins. Co., 37 Colo.App. 493, 552 P.2d 36, 37 (1976). Under an "injury" policy, expenses arising out of a covered injury which occurred while the policy was in force are paid even if the policy has terminated.
 
 
 4
 "An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." Chacon v. American Family Mut. Ins. Co., 788 P.2d 748, 750 (Colo.1990). "Interpretation of a written contract is generally a question of law for the court subject to independent reevaluation by an appellate court." Underdown v. Kissell, 817 P.2d 617, 618-19 (Colo.Ct.App.1991).
 
 
 5
 Whether the terms of a contract are ambiguous is a matter of law for the court to decide. To ascertain whether contract provisions are ambiguous, language must be construed according to the plain and generally accepted meaning of the words used, and reference must be made to all provisions of the agreement. A difference of opinion regarding the interpretation of an instrument does not, by itself, create an ambiguity.
 
 
 6
 Zimmerman Metals, Inc. v. United Eng'rs & Constructors, Inc., Sterns-Roger Div., 720 F.Supp. 859, 860 (D.Colo.1989) (construing Colorado law) (citations omitted). "Extrinsic evidence and presumptive rules in aid of construction may be used only if the instrument itself is ambiguous, unclear, or uncertain as to the meaning the parties intended by it." Barnes v. Van Schaack Mortgage, a Div. of Van Schaack & Co., 787 P.2d 207, 209 (Colo.Ct.App.1990). Because the district court here considered the policy to be ambiguous, it went beyond the policy language and read the policy in conjunction with Colorado statutory law. The court also construed the policy in favor of the insured. See Chacon, 788 P.2d at 750.
 
 The policy provides:
 
 7
 When as a result of sickness or accidental bodily injury, an Insured Person incurs Covered Expenses shown herein while this insurance is in force as to such Person, the Company will pay the applicable percentage, shown in the Policy Specifications, of such expenses incurred in excess of the Deductible Amount, not to exceed the Maximum Amount.
 
 
 8
 Appellant's App., Vol. I at B074. Covered Expenses are defined as "the Usual and Customary charges for [specified] services, supplies and treatment when medically necessary and when ordered by a Physician and Surgeon...." Id. at B075. The district court concluded that the policy could reasonably be construed as either an expense policy or an injury policy. We disagree and reverse the district court's declaratory judgment in favor of plaintiff.
 
 
 9
 Defendant correctly argues that the obligation to pay benefits under this policy is triggered only when an expense is incurred and not because an injury or illness has occurred during the life of the policy. Liability attaches only when the insured incurs "Covered Expenses ... while this insurance is in force." "Covered Expenses," defined as the charges for supplies and service, do not accrue prospectively for an illness that may have occurred during the coverage period. It is only when the insured actually incurs expense during the term of the policy that defendant is obligated to pay benefits. Because this policy provides coverage for expenses, as they are incurred, it is indistinguishable on that issue from the policy in Lister, and does not entitle plaintiff to post-termination benefits. See Lister, 797 P.2d at 834.
 
 
 10
 The district court identified no language in the policy which created an ambiguity, nor do we find any. Instead, the district court reasoned backwards from Colo.Rev.Stat. § 10-8-116(2)(b)(V) to conclude that this was an injury policy.[2] The court reasoned that, because the statute requires expense policies to contain a conversion privilege, and because this policy did not contain such a privilege, it, therefore, was not an expense policy.
 
 
 11
 We acknowledge that, by operation of law, Colorado insurance statutes are an implied part of policies governed by Colorado law. Crowley v. Hardman Bros., 122 Colo. 489, 223 P.2d 1045, 1050 (1950) ("[l]egislation in force at the time of the issuance of the policy became part and parcel thereof as definitely as if written therein."). At the time this policy was written, however, section 10-8-116(3)(a), which specified the requirements of the conversion privilege, applied only to policies delivered or issued for delivery in Colorado. Colo.Rev.Stat. § 10-8-116(3)(a) (Cum.Supp.1986). There was no evidence before the district court that the policy here was delivered or issued for delivery in Colorado. The policy was executed by American Life in Fargo, North Dakota, Appellant's App., Vol. I at B057, to a policyholder also located in Fargo. Id. at B058. While a certificate of insurance was delivered to plaintiff in Colorado, id. at B093, the delivery of a certificate is not tantamount to the delivery of a policy. New England Mut. Life Ins. Co. v. Gray, 786 F.2d 406, 408-09 (6th Cir.1986) (Michigan law does not apply to a group annuity contract issued in Minnesota where the certificate was delivered to a beneficiary in Michigan.). Our conclusion that the statute here did not apply to plaintiff's policy is buttressed by the fact that section 10-8-116(2)(a) was later amended to apply to "all policies of group sickness and accident insurance providing coverage to persons residing in the state," Colo.Rev.Stat. § 10-8-116(2)(a) (1987 Repl.Vol.Cum.Supp.1991), suggesting that the scope of the earlier statute was more limited.
 
 
 12
 In addition to the absence of a conversion privilege, the district court also noted that, because the policy did not explain what happened upon termination, it could reasonably be construed as an injury policy. The court apparently read Lister, 797 P.2d 832, to require an extended benefits provision before a policy would be construed as an expense policy. We disagree with the district court's reading of Lister regarding the presence or absence of an extended benefits provision.
 
 
 13
 Lister construed a policy that happened to have an extended coverage section. Id. at 834. It does not stand for the proposition that every expense policy must have such a provision, and that, without one, the policy will be an injury policy. Lister turned on the fact that the policy covered expenses as they were incurred and thus precluded the finding of an injury policy. Id. at 834. Because we find that the district court erred in holding that this policy was ambiguous and should therefore be construed as an injury policy, we reverse the judgment of the district court in appeal No. 92-1038.
 
 
 14
 In addition to entering judgment for plaintiff on the coverage issue, the district court also granted summary judgment to defendant on plaintiff's claim of breach of contract and various tort claims. In so doing, the district court correctly acknowledged that Fed.R.Civ.P. 56(e) mandates the entry of summary judgment if there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. We apply the same standard in conducting our de novo review as did the district court. Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir.1991), cert. dismissed, --- U.S. ----, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992).
 
 
 15
 Our determination that defendant was not liable for plaintiff's benefits beyond the date of termination resolves plaintiff's breach of contract claim based on failure to pay. We also agree with the district court that plaintiff failed to offer evidence of breach because of untimely notice of termination. And finally, we find no error in the district court's conclusion that the policy was not wrongfully terminated.
 
 The policy provides that:
 
 16
 The policy continues in effect from its effective date specified on the face of the policy as long as the premium is paid as provided herein, subject to the Grace Period as provided in the General Provisions hereof; provided however, that:
 
 
 17
 . . . . .
 
 
 18
 B. The Company may terminate the policy on any premium due date by giving written notice to the Policyholder at least 31 days prior to any premium due date.
 
 
 19
 C. The Company will not terminate or nonrenew the certificate solely on the grounds of the deterioration of the health of the Insured.
 
 
 20
 Appellant's App., Vol. I at B065. Plaintiff argues that by not renewing blocks of business that had poor claims experience, defendant violated the policy by terminating "solely on the grounds of the deterioration of the health of the Insured." This argument is without merit.
 
 
 21
 Based on policy language, defendant could terminate the policy for any reason or for no reason, except that it could not terminate "solely on the grounds of the deterioration of the health of the Insured." The parties do not dispute that the term "Insured" in paragraph C above refers to plaintiff. In order for plaintiff to prevail on her claim of wrongful termination, she would have to put forth evidence that defendant terminated the insurance plan because she had contracted lung cancer. This plaintiff has failed to do. Defendant's evidence was that it was losing money on an entire block of group policies sold to CHCA and so decided to terminate several group policies. Appellant's App., Vol. I at B184. Plaintiff's evidence that defendant was not losing enough money to justify termination is irrelevant. As long as plaintiff has not shown that the group policy was cancelled specifically because of her health problems, she has not shown that defendant wrongfully terminated the policy.
 
 
 22
 With regard to her claim for breach of the implied covenant of good faith and fair dealing, plaintiff argues that, even where an insurer is not liable for coverage, an insured can still recover extra-contractual damages for breach of the implied covenant. Plaintiff cites no Colorado case for this proposition, but that failure, in itself, does not doom plaintiff as much as the fact that plaintiff's evidence of bad faith does not rise to the level necessary to establish a genuine issue of material fact and to prevail as a matter of law.
 
 
 23
 To recover for bad faith breach of an insurance contract, one must prove that the insurer's conduct, viewed objectively in light of standards of conduct in the industry, was unreasonable and that the insurer either knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.
 
 
 24
 Martin v. Principal Casualty Ins. Co., 835 P.2d 505, 510 (Colo.App.1991) (citing Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1274 (Colo.1985)). The district court was correct in concluding that plaintiff's evidence failed to meet this standard.[3]
 
 
 25
 After the district court had entered summary judgment against plaintiff on her breach of contract and tort claims, plaintiff attempted to introduce what she characterized as "new" evidence by way of a motion under Fed.R.Civ.P. 59(e).[4] The district court noted that no Tenth Circuit law defined the standards for determining whether to reopen a case based on a Rule 59(e) motion advancing new evidence. After surveying other circuit law, the district court adopted the formula set out by the Fifth Circuit in Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167 (5th Cir.1990), which counsels a district court to
 
 
 26
 consider, among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before she responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.
 
 
 27
 Id. at 174.
 
 
 28
 Since the district court's decision, however, this circuit has held in Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992), that
 
 
 29
 [w]hen supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.
 
 
 30
 Id. (quoting Chery v. Bowman, 901 F.2d 1053, 1057-58 n. 6 (11th Cir.1990)). A district court's ruling on a Rule 59(e) motion is reviewed for abuse of discretion. Id.
 
 
 31
 Regardless of which standard is used in considering her Rule 59(e) motion, plaintiff has not shown that her late-offered evidence should have been considered by the district court. Plaintiff's evidence consisted of an expert's opinion of loss/ratio data obtained from defendant. This evidence not only fails to meet either of the standards discussed above, it is irrelevant to the question of wrongful termination. As explained above, as long as defendant did not terminate because of the deterioration in plaintiff's health, it had the right to terminate at will. Evidence of loss/ratio data to show that defendant's termination was for financial reasons, whether considered adequate by plaintiff's experts or not, was irrelevant. The district court did not abuse its discretion in refusing to consider it.
 
 
 32
 The judgment of the United States District Court for the District of Colorado is AFFIRMED with respect to the grant of summary judgment on plaintiff's damage claims and the denial of her Rule 59(e) motion. With respect to the issue of coverage, the judgment of the United States District Court for the District of Colorado is REVERSED and REMANDED for entry of a declaratory judgment in favor of defendant.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 [2]
 That statute, in force at the time the policy was delivered, provided:
 If the group insurance policy provides hospital, surgical, or major medical insurance or any combination of these coverages on an expense-incurred basis, for other than specified diseases or accidental injuries only, it shall also contain a conversion privilege conforming to the requirements of subsection (3) of this section.
 Colo.Rev.Stat. § 10-8-116(2)(b)(V) (Cum.Supp.1986). Subsection (3) of the above quoted section mandated a conversion privilege for all group policies "delivered or issued for delivery in this state." Colo.Rev.Stat. § 10-8-116(3)(a) (Cum.Supp.1986).
 
 
 [3]
 Plaintiff's contention that her expert's testimony regarding violation of Colo.Rev.Stat. § 10-3-1104(1)(h) created an issue of fact is mistaken. Even if an expert's testimony were to be admissable regarding the legal question of statutory violation, the testimony did not establish any material, factual issue here regarding defendant's conduct sufficient to preclude summary judgment. See Appellant's App., Vol. I at B243-58
 
 
 [4]
 Rule 59(e) provides:
 (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.