FILED
United States Court of Appeals
Tenth Circuit

January 5, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FIREMAN'S FUND INSURANCE
COMPANY, a California corporation,

      Plaintiff/Counterclaim
      Defendant - Appellant,

v.

STEELE STREET LIMITED II, a
Colorado limited partnership,

      Defendant/Counterclaim
      Plaintiff - Appellee.

No. 19-1096
(D.C. No. 1:17-CV-01005-PAB-SKC)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **KELLY**, and **HOLMES**, Circuit Judges.

---

Plaintiff–Appellant Fireman's Fund Insurance Company ("Fireman's

Fund") appeals from the District of Colorado's decision to grant the motion for

partial summary judgment of Defendant–Appellee Steele Street Limited II

("Steele"). Fireman's Fund sought a declaratory judgment limiting the scope of

an appraisal provision ("the Appraisal Provision") in an insurance policy ("the

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and 10th Circuit Rule 32.1.

Policy"). Steele filed a counterclaim to enforce the Appraisal Provision. The

Policy was issued by Fireman's Fund and covers a building that Steele owned,

located at 250 Steele Street in Denver, Colorado ("the Building"). On June 24,

2015, a hailstorm allegedly caused the Building's brick facade to "chip" or

"flake," prompting Steele to file an insurance claim with Fireman's Fund ("the

Brick Claim"). Fireman's Fund acknowledged that some of the hail damage to

the Building was covered under the Policy but argued that the Brick Claim was

excluded because there had been no "direct physical loss . . . or damage" to the

bricks from the hail within the meaning of the Policy. As a result of the district

court's grant of partial summary judgment to Steele, Fireman's Fund is required

to adhere to the Policy's Appraisal Provision in addressing certain issues related

to the Brick Claim.

This appeal obliges us to determine, at the threshold, whether we have

subject matter jurisdiction.[1] To do this, we must determine whether the district

court's order granting partial summary judgment to Steele—which required

Fireman's Fund to adhere to the Policy's Appraisal Provision regarding the Brick

Claim—was substantively an injunctive order that would allow for the exercise of

appellate jurisdiction under 28 U.S.C. § 1292(a)(1). We conclude that the court's

---

[1]    At the direction of our court, the parties separately filed memoranda on the jurisdictional question.

order was indeed substantively injunctive, and, therefore, we may properly exercise jurisdiction over this interlocutory appeal.

Because we have appellate jurisdiction, we next consider the merits. Fireman's Fund contends that the district court erred in two central respects. First, according to Fireman's Fund, the court erred by framing the parties' dispute as "presenting an issue of factual causation rather than policy interpretation." Aplt.'s Opening Br. at 14. And, second, Fireman's Fund contends that even assuming the court properly determined that Steele presents a dispute involving factual causation—as opposed to policy interpretation—the court erred in enforcing the Policy's Appraisal Provision because the appraisal process does not encompass questions of factual causation. After thoroughly considering the record and the relevant law, we reject both of Fireman's Fund's contentions of error. Accordingly, exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we **affirm** the district court's grant of partial summary judgment.

## I

On June 24, 2015, a hailstorm damaged the Building. The Building was constructed in 1986, and its exterior is textured brick.[2] In May 2015, Fireman's

---

[2] The parties agree that the brick's surface has upraised parts that can "flake" or "chip" off. *Compare* Aplt.'s App., Vol. II, at 286 (Knott Laboratory, LLC report, dated Sept. 19, 2016) (Fireman's Fund's expert, Knott Laboratory, LLC, finding that "[t]he bricks contain a surface consistency/texture wherein the
(continued...)

Fund issued the Policy for the Building, which covered "direct physical loss of or damage to" the Building from May 10, 2015 to May 10, 2016. Aplt.'s App., Vol. II, at 297, 319. Hail is a covered event under the Policy, which permits the insured to recover for at least some claims stemming from hail.[3]

To help assess the extent of the damage for filing an insurance claim with Fireman's Fund, Steele retained public adjuster Derek O'Driscoll of Impact Claim Services ("Impact"). In May 2016, Impact sent Fireman's Fund a letter stating there was "a significant amount of spalled and fractured fragments from the subject propert[y's] brick facades, scattered around the property following the event in question." Aplt.'s App., Vol. II, at 464 (Letter from Impact, dated May 24, 2016). This, Impact asserted, "provide[d] an indication of the significant amount of brick that would have been damaged on the date of loss." *Id.* Impact

---

[2](...continued)
exterior face of the brick is intentionally distressed for architectural appearance"), *with id.* at 464 (Letter of Impact Claims Services, LLC, dated May 24, 2016) (Steele's appraiser, Impact Claim Services, LLC, finding a "significant amount of spalled and fractured fragments from the subject propert[y's] brick facades, scattered around the property").

[3]      Both parties acknowledge that the Policy covers hail damage. More specifically, Fireman's Fund's correspondence with Steele regarding claims for hail damage states, "[t]he claim involves damage to the insured's building located at 250 Steele Street in Denver, Colorado due to a hailstorm . . . ." Aplt.'s App., Vol. II, at 470. Furthermore, the district court's order states, "[h]ere, the parties do not dispute that plaintiff paid part of defendant's claim, indicating that it was liable for damages to the building caused by the June 24, 2015 hailstorm." Aplt.'s App., Vol. III, at 617 (Dist. Ct. Order, filed Feb. 13, 2019).

also noted the "difference in color between the undamaged and hail spalled areas of brick facade." *Id.* Ultimately, Impact concluded the following: "Given the extent of the damages, the availability of the brick, and the inability to return the property to a pre-loss condition through spot repairs, the brick facade must be removed and replaced in its entirety." *Id.* at 467 (Letter from Impact, dated Dec. 3, 2016).

After Steele filed its claim, Fireman's Fund hired Knott Laboratory, LLC ("Knott Laboratory"), an engineering firm, to separately inspect the Building for hail damage. Knott Laboratory issued its report in September 2016. The Knott Laboratory report recognized that it was "reasonable to conclude" that some of the flaking of the brick on the Building was due to the June 2015 hailstorm, stating: "Given the brick type and its propensity to display intentional distress, it is reasonable to conclude that a portion of the west-facing textured surfaces of the brick were removed during the recent hailstorm." *Id.*, Vol. II, at 287 (Knott Laboratory, LLC report, dated Sept. 19, 2016). However, it further found: that the brick's "irregularities are random and intentional and will weather over time"—including, notably, due to hail impact; that "[r]egardless of causation, including that by hail impact, this change is expected and inherent in this type of brick and is intentional by the original designer"; that "[t]he functionality and life-expectancy of the brick has not been reduced and the overall aesthetic of the

5

brick has not been altered as a whole despite small chips being removed"; and, perhaps most significantly, that "any removal of chips from the brick via hail impact, or otherwise, is not damage to the brick." *Id.* at 287–88.

In a letter dated, October 17, 2016, Fireman's Fund informed Impact that it intended to pay Steele a total of approximately $105,331.00 in satisfaction of Steele's claims for damage to the Building caused by the June 2015 hailstorm. Significantly, however, this amount did not include payments relating to the Brick Claim—that is, for the flaking of the Building's brick facade. Specifically, based on Knott Laboratory's report and its own investigation, Fireman's Fund "concluded that the hailstorm caused no identifiable 'direct physical loss of or damage to' the brick façade," as required for policy coverage. *Id.*, Vol. III, at 570. Fireman's Fund elaborated further on its rationale:

> Although the hail may have resulted in some flaking of the bricks, it is impossible to identify any particular flaking that was specifically caused by the hail, nor did the building experience any significant amount of flaking in addition to what has naturally occurred from normal exposure to the elements over the past 30 years. In sum the hailstorm does not appear to have demonstrably altered either the appearance or the functionality of the brick facade in any way.

*Id.* at 570–71. After several exchanges between Fireman's Fund and Impact about the Brick Claim, on March 6, 2017, Impact sent a letter to Steele stating that, in light of the absence in progress in resolving this claim, Steele should invoke the

Appraisal Provision outlined in Part E of the Policy, to allow an appraisal to be conducted to determine the amount of loss on the Brick Claim.

The Appraisal Provision in the Policy reads:

> **E. Property Loss Conditions**
>
> . . . .
>
> 2. Appraisal
>
> If we and you disagree on the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*Id.*, Vol. I, at 112.

On April 21, 2017, Fireman's Fund filed a one-claim complaint in the U.S. District Court for the District of Colorado seeking a declaratory judgment that the issue related to the Brick Claim that Steele sought to pursue through the appraisal process was "not a proper subject for an appraisal under the subject insurance

7

policy." *Id.* at 13 (Complaint, filed April 21, 2017). Steele filed an answer asserting five counterclaims. Only the first counterclaim—seeking enforcement of the Appraisal Provision—is relevant to this appeal. In the first counterclaim, Steele asked the district court to enter an order "directing Plaintiff and Counterclaim Defendant [Fireman's Fund] to honor its Policy by engaging in proceedings in accordance with the appraisal provision of the Policy." *Id.* at 43.

The district court exercised diversity jurisdiction over the action. *See* 28 U.S.C. § 1332. And, consistent with the parties' briefing, the court applied the law of the forum state—Colorado. *See, e.g.*, *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015) (applying the substantive law of the forum state in a lawsuit invoking the court's diversity jurisdiction).

On August 31, 2017, Fireman's Fund moved for partial summary judgment. It argued that the Brick Claim was not subject to the Appraisal Provision because the brick flaking did not cause Steele to suffer any "direct physical loss . . . or damage" within the meaning of the Policy. Steele cross-moved for partial summary judgment to enforce the Appraisal Provision. Steele maintained that "the undisputed facts demonstrate a single loss event for which Fireman's Fund . . . admitted coverage." Aplt.'s App., Vol. II, at 524. And Steele requested that "the Court enter partial summary judgment in its favor on its First

Counterclaim directing the parties to appraise the loss from the June 24, 2015 storm." *Id.* at 536.

On February 13, 2019, the district court denied Fireman's Fund's motion for partial summary judgment, and granted Steele's cross motion. Specifically, the district court found, "the insurance contract requires the parties to participate in an appraisal of the loss on the brick claim." *Id.*, Vol. III, at 617. And the district court accordingly "ordered that Defendant [Steele's] Cross Motion for Partial Summary Judgment . . . is granted." *Id.* at 620 (bold and capitalization omitted). The court, however, did not expressly indicate that its order was providing injunctive relief. It administratively closed the case pursuant to D.C. Colo. L. Civ. R. 41.2 ("A district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause.") and also acknowledged that completion of the appraisal process would constitute good cause to reopen it.

Fireman's Fund timely filed a notice of appeal, seeking to proceed on an interlocutory basis under 28 U.S.C. § 1292(a)(1)—on the view that the district court's order constituted an appealable injunction. Fireman's Fund also moved to have the district court certify its February 13, 2019, order as either an appealable "final judgment" pursuant to Fed. R. Civ. P. 54(b), or a "controlling question of law" appropriate for interlocutory appeal under 28 U.S.C. § 1292(b). *See, e.g.,*

*Miller v. Basic Research, LLC*, 750 F.3d 1173, 1176 n.2 (10th Cir. 2014).  On

August 12, 2019, the district court denied this motion.

## II

Generally, a federal court "may not rule on the merits of a case without first

determining that it has jurisdiction[.]"  *Kelley v. City of Albuquerque*, 542 F.3d

802, 817 n.15 (10th Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l*

*Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). Here, the district court's order

required Fireman's Fund to adhere to the Appraisal Provision of the Policy;

consequently, the district court ordered Fireman's Fund to specifically perform a

contractual obligation.  *See Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467,

1469 (10th Cir. 1993); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748,

750 (Colo. 1990) ("An insurance policy is a contract . . . .").  "Specific

performance [of a contract provision] is an equitable remedy, and an interim grant

of specific relief is a preliminary injunction."  *Westar Energy, Inc. v. Lake*

("*Westar*"), 552 F.3d 1215, 1222–23 (10th Cir. 2009).  Therefore, we conclude

that we have jurisdiction under 28 U.S.C. § 1292(a)(1), which extends appellate

jurisdiction to "[i]nterlocutory orders of the district courts . . . granting . . .

injunctions."

"From the very foundation of our judicial system the object and policy of

the acts of [C]ongress . . . ha[s] been to save the expense and delays of repeated

10

appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal." *McLish v. Roff*, 141 U.S. 661, 665–66 (1891) (citing *Forgay v. Conrad*, 47 U.S. 201, 205 (1848)).  28 U.S.C. § 1291 codifies this principle by allowing federal circuit courts to review only "final decisions" of district courts.  *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016) (citing 28 U.S.C. § 1291).  Nevertheless, Congress found § 1291's rigid application to present an undue hardship, so it created exceptions to the "final decision" principle.  *See Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981)).  One of these exceptions is 28 U.S.C. § 1292(a)(1)—which permits appeals as of right from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions."

Under § 1292(a)(1), appeals from orders expressly granting or denying interlocutory injunctive relief generally raise few jurisdictional questions. *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997) ("An 'order expressly granting or denying injunctive relief fits squarely within the plain language of § 1292(a)(1)' and is reviewable on interlocutory appeal . . . ." (quoting *Tri–State Generation & Trans. v. Shoshone R. Power*, 874 F.2d 1346, 1351 (10th Cir. 1989))).  But § 1292(a)(1) is "a limited exception to the final-judgment rule of 28 U.S.C. § 1291 and the 'long-established policy against piecemeal appeals.'"

11

*Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007) (quoting *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978)); *see Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966) ("[W]e approach [§ 1292(a)(1)] somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders."). Thus, "courts of appeals insist on looking beyond the captions and vocabulary attached to district court orders to determine the actual, practical effect of an order before exercising appellate jurisdiction under § 1292(a)(1)." *Pimentel*, 477 F.3d at 1153. Therefore, we consider "the substance rather than the form of the motion and caption of the order" to determine "whether a district court order 'granting' an injunction is appealable under § 1292(a)(1)." *Id*. at 1153–54 (citing *Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir. 1990)).

A substantively injunctive order—and, therefore, an appealable order— is "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3922 (3d ed. 2021); *see also Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc); *I.A.M. Nat'l Pension Fund v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986). This framework ensures appellate

jurisdiction does not extend to court orders merely because they direct parties "to do something." *S. Ute Indian Tribe v. Leavitt*, 564 F.3d 1198, 1207 (10th Cir. 2009) (quoting *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994)). "Only orders awarding relief on the merits, or effectively foreclosing some element of relief, may be appealed as injunctions." *Id.* (emphasis omitted) (quoting *Mercer*, 40 F.3d at 896).

Under this framework, ordinarily, orders requiring a party to specifically perform a contractual condition can be appealed. *Westar*, 552 F.3d at 1222–23. This conclusion is also accepted by our sister circuits. *See Cohen*, 867 F.2d at 1468 ("[S]pecific enforcement of contractual undertakings by an order against the person has been regarded as a classic form of equitable relief. . . . [I]f it is granted the order falls within section 1292(a)(1)."); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 566 (7th Cir. 2000) (holding that jurisdiction was established under § 1292(a)(1) where, even though "[t]he district judge did not use the magic word 'injunction,' . . . his order is injunctive in nature, requiring [a party] to perform enumerated steps under threat of the contempt power"); *Pac. Ins. Co. v. Gen. Dev. Corp.*, 28 F.3d 1093, 1096 (11th Cir. 1994) (holding that an order directing an insurer to advance legal fees pursuant to an insurance policy was an immediately appealable injunction).

The district court's decision to grant Steele's motion for partial summary judgment and thus to enforce the Policy's Appraisal Provision was not a final order resolving the litigation. But it acted as an injunction, because it required Fireman's Fund to specifically perform the actions stated in the Appraisal Provision. We have already held that mandating the "[s]pecific performance [of a contract provision] is an equitable remedy, and an interim grant of specific relief is a preliminary injunction." *Westar*, 552 F.3d at 1222–23. We also have ruled that insurance polices are considered contracts under Colorado law. *See Buell* 987 F.2d at 1469. Thus, even though the district court did not specifically call its order an injunction, it granted injunctive relief. *See Hutchinson*, 105 F.3d at 569–70.

Contrary to Steele's suggestion, the rubric of *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), is inapplicable here. "Under *Carson*, an interlocutory order with the 'practical effect' of *denying* an injunction is only appealable if the litigant can show a 'serious, perhaps irreparable, consequence' and the order can only be 'effectually challenged' upon interlocutory appeal." *Westar*, 552 F.3d at 1223 (emphasis added) (quoting *Carson*, 450 U.S. at 84). Here, however, the district court's order did *not deny* an injunction—in practical effect or otherwise. Instead, though not expressly denominated an injunction, it clearly granted injunctive relief by requiring a party to specifically perform a contractual

14

condition. *See id.* ("Since the district court's order expressly granted relief, it is immediately appealable notwithstanding the court's failure to label the relief as injunctive."); *id.* at 1223 n.6 ("This eliminates the need to determine whether the heightened *Carson* showing is necessary when an interlocutory order has the practical effect of granting, rather than denying, a preliminary injunction."). Accordingly, the *Carson* rubric is inapplicable here.

In sum, the district court's order granted Steele's request for equitable relief—requiring Fireman's Fund to specifically perform under the Policy's Appraisal Provision. And because requiring specific performance is "equitable in nature and constitutes the grant of a preliminary injunction," the district court's order is substantively an injunctive order and thus appealable on an interlocutory basis. *Westar*, 552 F.3d at 1224. Consequently, we properly exercise jurisdiction over this appeal under § 1292(a)(1).

## III

Having determined that we may exercise jurisdiction under § 1292(a)(1), we turn to the merits of the district court's order, reviewing the district court's grant of partial summary judgment de novo and applying the same legal standard as the district court. *Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1336 (10th Cir. 2017) (citing *Cornhusker*, 786 F.3d at 849). After thoroughly considering the parties' arguments—through the prism of the relevant law and the

15

record—we conclude that Fireman's Fund cannot prevail.  Therefore, we uphold the district court's order.

A

Although appraisal, like the arbitration remedy, is "designed to be consistent with the public policy of discouraging litigation," unlike the broad mandate that comes with arbitration, appraisal limits the parties to "refer[ing] some . . . matter involving only the ascertainment of facts to selected persons for disposition."  15 Steven Plitt, et al., COUCH ON INSURANCE § 209:8, Westlaw (3d ed., database updated Dec. 2021); *cf. J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007) ("Colorado law favors the resolution of disputes through arbitration." (citing *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 346 (Colo. 1998))).  Fireman's Fund contends that the district court erred by framing the parties' dispute as "presenting an issue of factual causation rather than policy interpretation."  Aplt.'s Opening Br. at 14.  We disagree.

In advancing this position, Fireman's Fund underscores that it does not dispute that the June 24, 2015, hailstorm was the factual cause of some flaking of the Building's brick facade.  *See id.* at 22 (stating that "Fireman's does not factually dispute the consequence of the occurrence—here that hail caused irregular surface texture to flake off the bricks").  Accordingly, Fireman's Fund contends that there is no factual-causation question presented in Steele's claim for

16

an appraiser to resolve.  Thus, reasons Fireman's Fund, Steele necessarily seeks to send to an appraiser an issue of policy coverage—not factual causation—relating to whether the hailstorm's effects on the Building's brick constitute "direct physical loss or . . . damage" within the meaning of the Policy. And, under Colorado law, it would be improper for an appraiser to resolve such coverage questions because doing so falls within the courts' remit.  *See, e.g.*, *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986) (noting that "the interpretation of an established written contract is generally a question of law for the court"); *accord Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) (applying Colorado law).

However, we do not believe that legal questions of coverage are directly implicated by Steele's invocation of the Appraisal Provision.  Steele seeks an appraiser's judgment regarding the nature and scope of the hailstorm's effects on the Building's brick facade and the resulting costs to remedy those effects. Boiled down to their essence, the questions Steele seeks to resolve through the appraisal process raise at least the following overarching, factual-causation issues: whether the hailstorm's effects extend beyond or are distinct from the flaking that ordinarily would be intended or expected from the type of brick found on the Building and, relatedly, what are the costs of remedying those effects.  *See BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1178, 1182

17

(10th Cir. 2021) (noting that "as here, 'the causation question involves separating loss due to a covered event from a property's pre-existing condition'" (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892 (Tex. 2009))); *Philadelphia Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 817–18 (S.D. Ind. 2014) (noting that where the parties "disagree[d] . . . on the amount of loss that is attributable to covered storm damage rather than excluded causes such as 'wear and tear' or faulty roof installation," that "it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage'"); *cf. Wausau Ins. Co. v. Herbert Halperin Distrib. Co.*, 664 F. Supp. 987, 988–89 (D. Md. 1987) (presenting a hypothetical example of a dispute subject to an appraisal provision in which the insured "was disputing that as a factual matter a larger area than that immediately damaged by the occurrence had to be repaired in order to repair the immediate damage itself[;] this would constitute an 'amount of loss' question").

And, in denying coverage, Fireman's Fund puts just such factual-causation issues front and center. As the district court noted, Fireman's Fund's coverage decision was actually "based not on policy definitions but on a causation analysis." Aplt.'s App., Vol. III, at 616. In sound reasoning, the court elaborated as follows:

18

> [I]n order to reach its conclusion that no "physical loss" or "damage" occurred under the policy, [Fireman's Fund] made a causation determination – whether the hailstorm caused flaking or other damage to the brick facade. [Fireman's Fund's] causation analysis is therefore of the type that is contemplated by the appraisal process.

*Id.* at 616–17.

As validation for the district court's view, we need merely recall Fireman's Fund's rationale in denying coverage:

> Fireman's Fund has concluded that the hailstorm *caused* no identifiable "direct physical loss of or damage to" the brick façade. Although the hail may have resulted in some flaking of the bricks, it is impossible to identify any particular flaking that was *specifically caused by the hail*, nor did the building experience any significant amount of flaking in addition to what *has naturally occurred from normal exposure to the elements* over the past 30 years.

*Id.* at 570 (emphases added). In light of the Knott Laboratory report, Fireman's Fund effectively reasoned that the brick on the Building's facade was designed to have an "intentionally distressed" look and that "irregularities are random and intentional and will weather over time"; consequently, any hail-induced flaking would not reduce the "functionality and life-expectancy of the brick." *Id.* at 569–70 (quoting the Knott Laboratory report, Aplt.'s App., Vol. II, at 287). Consequently, as Fireman's Fund assessed the matter, there was no foundation for coverage—that is, there was no "direct physical loss of or damage to" the brick facade, within the meaning of the Policy.

19

In effect, Fireman's Fund has sought to resolve disputed factual-causation issues related to the Brick Claim by fiat, rather than through the appraisal process. Permeating Fireman's Fund's rationale for denying coverage are precisely the kinds of factual-causation issues underlying Steele's request for an appraisal: in particular, the issue of whether the hailstorm's effects extend beyond or are distinct from the flaking that ordinarily would be intended or expected from the type of brick found on the Building and, relatedly, the costs of remedying those effects. And this set of factual issues is not put to rest—as Fireman's Fund suggests—by its general acknowledgment that the June 24, 2015, hailstorm was the factual cause of some flaking of the Building's brick facade. The central effect of Fireman's Fund's argument is to repackage factual-causation issues about the hailstorm's effects on the Building's bricks as a legal issue of coverage under the Policy. We are not persuaded by this effort.

Based on the foregoing, we reject Fireman's Fund's contention that the district court erred by framing the parties' dispute as "presenting an issue of factual causation rather than policy interpretation." Aplt.'s Opening Br. at 14.

**B**

Fireman's Fund nevertheless contends that the district court took a second critical misstep—which effectively sealed its fate—when it determined that factual causation is a proper subject for consideration by appraisers.

20

Consequently, as Fireman's Fund reasons, even assuming that Steele has advanced a factual-causation dispute—as opposed to one involving policy coverage—the district court erred in enforcing the Policy's Appraisal Provision because factual-causation issues are not appropriately resolved through the appraisal process. However, we must disagree again.

More specifically, Fireman's Fund acknowledged in its briefing that whether appraisers may decide this causation subject has not been conclusively resolved by the Colorado Supreme Court. Yet it argued that "[t]he better rule is that the scope of appraisals should be limited to the unambiguous meaning of the word 'amount'—the value of loss only.'" *Id.* at 14. Further, Fireman's Fund has reasoned that "the existence of a covered 'loss' is a sine qua non for an appraisal"; more specifically, "an appraisal is not appropriate unless the parties agree that a loss has occurred and they disagree over the amount of that loss." Aplt.'s Reply Br. at 24. Accordingly, Fireman's Fund has argued that, even assuming Steele has raised factual-causation issues, they are not properly addressed by an appraiser because, notably, there is no agreed-upon covered loss as to the Brick Claim.

However, since the parties submitted their briefs and we heard oral argument, our court has predicted that the Colorado Supreme Court would conclude that factual causation *is* an appropriate subject for resolution by

21

appraisers. *BonBeck*, 14 F.4th at 1178, 1182. We did so by construing the plain meaning of the term "amount of loss" in an insurance-policy appraisal provision that, in all material respects, is like the one at issue here. *See id.* at 1178 ("We therefore conclude that the Colorado Supreme Court, if faced with the issue, would join these courts in recognizing that in the insurance context, the ordinary meaning of the phrase 'amount of loss' encompasses causation."). Moreover, in reaching this conclusion, we rejected essentially the same argument that Fireman's Fund advances here—that the term "amount of loss" should be understood as relating to "the value of loss only,'" Aplt.'s Opening Br. at 15, 32. *See BonBeck*, 14 F.4th at 1180–81 (rejecting the argument that the scope of appraisals is limited to monetary determinations, that is, the value of loss).

We conceive of no reason why *BonBeck*'s reasoning should not apply to these facts. Accordingly, its prediction regarding the position of the Colorado Supreme Court binds us. *See, e.g.*, *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue."). And this conclusion fatally undercuts Fireman's Fund's second contention. That is, under *BonBeck*'s prediction, the district court did not err in enforcing the Policy's Appraisal

22

Provision—even though Steele has presented a dispute involving factual causation.

Lastly, it bears emphasizing that nothing in our decision suggests that the appraiser is authorized to opine on the ultimate question of coverage. The appraisal process that Steele seeks is intended to produce a binding resolution concerning certain factual issues bearing on coverage for the Brick Claim. Any incidental legal determination regarding the ultimate coverage question would be outside the scope of the appraisal process and subject to review. *See* 15 Plitt, *supra*, § 209:8; *cf*. Colo. Rev. Stat. § 13-22-223(1)(d) (requiring courts to vacate arbitration awards when arbitrators exceed their powers).

Thus, Fireman's Fund can still exercise its right to deny the claim for a variety of reasons that are not inconsistent with the appraiser's factual findings. *See* Aplt.'s App., Vol. I, at 112 ("If there is an appraisal, we will still retain our right to deny the claim."); *see also BonBeck*, 14 F.4th at 1179–80 ("The [Appraisal] Panel makes a factual finding on how much hail damage occurred. After the appraisal, Travelers can't rehash that finding, but it can deny the claim for a host of other reasons having nothing to do with the cause of the damage."). In short, Fireman's Fund is bound by the appraisal's factual findings and the cost computations associated with those findings, but it can still contest in court the ultimate coverage question under the Policy as a legal matter.

23

In sum, we reject Fireman's Fund's contention that the district court erred when it determined that factual causation is a proper subject for consideration in the Policy's appraisal process.

## IV

For the forgoing reasons, we **AFFIRM** the district court's order granting partial summary judgment to Steele, which effectively enforces the Policy's Appraisal Provision.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

24